FRANCES L. HOBBIE *et al.*

*v.*

MARIANNA A. OGDEN *et al.*

*Opinion filed February 17, 1899.*

1. DEEDS—*rule as to vesting of realty applicable also to personalty.* The principles of law applicable to the vesting of real estate apply generally to personal property arising from the conversion of realty into personal property under the terms of a trust deed.

2. SAME—*word "heirs" usually limits the estate granted.* Words in a trust deed requiring a re-conveyance by the trustee to the grantor "or his heirs" upon the termination of a life use for the benefit of the grantor's divorced wife, are words of limitation and not of purchase, where they denote the heirs of the grantor generally, or the whole line of heirs in succession, thereby limiting and marking out the estate granted.

3. SAME—*when deed does not create an alternative remainder in grantor "or his heirs."* A trust deed, made to carry out a divorce decree by carving out an equitable life estate for the use of the grantor's divorced wife, which provides that upon the termination of the life estate the trustee shall re-convey to the grantor "or his heirs," does not create a remainder in any one, but merely stipulates for a re-conveyance of the title which equitably remained in the grantor subject to the trust, and the grantor's devisee may enforce the re-conveyance in equity. (*Strode* v. *McCormick*, 158 Ill. 142, distinguished.)

*Hobbie* v. *Ogden*, 72 Ill. App. 242, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. O. H. HORTON, Judge, presiding.

WILLIAM R. HUNTER, (MARVIN BLANCIIARD, of counsel,) for appellant Frances L. Hobbie:

A will takes effect upon the death of the testator—in many cases long after the same has been executed; while a deed takes effect instantly upon its delivery, and is effective during the lifetime of the grantor. For this reason many of the rules of construction applicable to wills cannot be applied to deeds. *King* v. *Rea*, 56 Ind. 14.

Greater latitude is allowed in the construction of wills than in deeds. Technical rules are not so rigidly applied in wills as in the construction of deeds. *Butler* v. *Huestis*, 68 Ill. 595; *Brownfield* v. *Wilson*, 78 id. 467.

By will a fee may be mounted upon a fee, commonly called an executory devise. But such cannot be done by deed. *Siegwald* v. *Siegwald*, 37 Ill. 431; *Glover* v. *Condell*, 163 id. 566.

The question is not what the parties to the deed may have intended to do, but "What is the meaning of the words used?"—a most important distinction in all classes of construction, and the disregard of which often leads to erroneous conclusions. 2 Devlin on Deeds, 837.

The law favors the vesting of estates, and will construe an instrument as creating a vested interest, if possible. *Ducker* v. *Burnham*, 146 Ill. 22; *Scofield* v. *Olcott*, 120 id. 362; *Kellett* v. *Shepard*, 139 id. 433; 4 Kent's Com. 203.

The law presumes the words of postponement relate to the enjoyment of the remainder rather than to the vesting thereof, and the intent to postpone the vesting of the estate must be clear and manifest. *Ducker* v. *Burnham*, 146 Ill. 22; *Heilman* v. *Heilman*, 129 Ind. 59.

It is a further principle of construction of deeds, that if the terms therein vest a fee in the first taker, other

parts of the instrument showing an intention to give a less estate will not control. *Palmer* v. *Cook*, 159 Ill. 300.

Courts are disposed to adopt such construction as will give an estate of inheritance to the first donee. *Leiter* v. *Sheppard*, 85 Ill. 242; *Shearman* v. *Worcester*, 26 Iowa, 272.

When a fee is devised by a clause or clauses, and other portions or clauses are relied upon as limiting or qualifying the estate thus given, they should be such as show the clear intention of the grantor to thus limit or qualify the estate granted. Such an intent should clearly and unequivocally appear. *Giles* v. *Anslow*, 128 Ill. 187.

If a fee be devised by the express terms of the first clause, a gift over by the second can only take place as an executory devise by will,—not by deed. *Wilson* v. *Turner*, 164 Ill. 398.

An estate is contingent when the right of enjoyment is to accrue on an event which is dubious and uncertain. Fearne on Remainders, 1.

If it be uncertain whether the use or estate limited *in futuro* shall ever vest, that use or estate is said to be in contingency. 4 Kent, 202.

PENCE & CARPENTER, for appellant Lydia H. Cone:

The words "or his heirs" are technically words of limitation, but are also words of purchase, and always have that operation when it sufficiently appears that the term is used to designate a particular person or a class of persons who may stand in that relation. *Ebey* v. *Adams*, 135 Ill. 80; *Salisbury* v. *Petty*, 3 Hare, 85; *Girdlestone* v. *Doe*, 2 Sim. 225; *Rob* v. *Belt*, 12 B. Mon. 643; *In re Porter's Trust*, 4 K. & J. 188; *Wren* v. *Hynes*, 2 Metc. 129; *Cook* v. *De Vandes*, 9 Ves. 199; *Cripchase* v. *Simpson*, 16 Sim. 485; *Montague* v. *Nucella*, 1 Russ. 146; *Gittings* v. *McDermott*, 2 M. & K. 69; *Blundell* v. *Chapman*, 33 Beav. 648; *Penley* v. *Penley*, 12 id. 547; *Jacobs* v. *Jacobs*, 16 id. 557; *Timmins* v. *Stackhouse*, 27 id. 434; *Butler* v. *Bushnell*, 3 M. & K. 232; *Finlason* v. *Tatlock*, L. R. 9 Eq. 258; 1 Jarman on Wills, 516.

The principle distinguishing a contingent from a vested estate in personal property is, that where there is a present or immediate gift, and the payment is postponed to some future day, then such gift is vested; but where there is no gift except in the directions to pay over or divide the estate, then such gift becomes vested only upon the happening of the event upon which the estate is to be distributed. The subject matter in controversy is personal property. Land devised to be sold and the proceeds distributed is a devise of the proceeds, and not of the land. *Ebey* v. *Adams*, 135 Ill. 85; *Crerar* v. *Williams*, 145 id. 640; *Baker* v. *Copenbarger*, 15 id. 103; *Jennings* v. *Smith*, 29 id. 116.

A present interest only passes by deed, discharge or release, unless a future or contingent interest is expressly mentioned in the instrument, and is sought thereby to be transferred, controlled, disposed of or released. *Rich* v. *Lord*, 18 Pick. 322; *Glover* v. *Condell*, 163 Ill. 566; *Stryker* v. *Mott*, 28 N. Y. 82.

WILSON, MOORE & MCILVAINE, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This is a controversy concerning the right to recover a trust fund from the executors and trustees of the estate of William B. Ogden, deceased, who are the appellees, in which they dispute the right of either of the appellants to call them to account. The appellants have prosecuted separate appeals, and each claims the right to recover such fund and denies the right of the other appellant to it or any part of it.

The facts are as follows: On May 21, 1853, Albert G. Hobbie was owner in fee of lots 5 and 6, in block 13, in Fort Dearborn addition to Chicago, and on that day a decree had been entered in the court of common pleas in said city divorcing his wife, Eleanor O. Hobbie, from

him, by which decree they were ordered to convey said lots to William B. Ogden, as trustee, for said Eleanor O. Hobbie during her natural life. In obedience to the said decree a trust deed was executed the same day, and it is as follows:

"This indenture, made this 21st day of May, in the year 1853, between Albert G. Hobbie, of the county of Kankakee, in the State of Illinois, and Eleanor O. Hobbie, of Cook county, in said State, and William B. Ogden, of Cook county, in said State, trustee, as hereinafter provided:

"*Witnesseth:* Whereas a decree of divorce between Albert G. Hobbie and Eleanor O. Hobbie has this day been entered in the Cook county court of common pleas, by which, among other things, it is ordered that said Albert G. Hobbie and Eleanor O. Hobbie shall convey, by deed to William B. Ogden, trustee, the premises hereinafter mentioned and described:

"Now, therefore, in pursuance of said decree, and for the purpose of carrying out the same, and for providing for the support and maintenance of said Eleanor O. Hobbie during her natural life, and for the support and education of Lydia Harper Hobbie and Orlanda Reeves Hobbie, daughters of said Eleanor O. Hobbie, the said Albert G. Hobbie and the said Eleanor O. Hobbie do hereby grant, bargain, sell and convey unto said William B. Ogden, in trust, as hereinafter stated, in fee simple and free from all encumbrance, lots number five (5) and six (6), in block number thirteen (13), in Fort Dearborn addition to Chicago, as it was originally laid out and sold by the United States, reference being had to the plat thereof on record in the recorder's office of said county of Cook, being ninety-six (96) feet on Wabash avenue and extending back the depth of said lot; to have and to hold said premises unto the said Ogden upon the following trusts and conditions, to-wit:

"*First*—To pay all taxes and assessments upon the property and fund hereby created, and such reasonable

costs and expenses as may be necessary in the execution of this trust, including a reasonable compensation to the trustees.

"*Second*—To pay said Eleanor O. Hobbie the rents, issues and profits of said property for the support of herself and the support and education of her children, Lydia Harper Hobbie and Orlanda Reeves Hobbie, until the sale of the premises as herein provided.

"*Third*—To sell said premises in whole or in parcels, at as early a period as the same can be done without sacrifice, upon the best terms possible, either for cash or on credit, and upon such sale to make all such conveyances as may be necessary to vest in the purchaser a good and sufficient title to the same.

"*Fourth*—To invest and re-invest, from time to time, the fund so arising from such sale by loaning the same at the highest rate of legal interest, such loans to be secured upon unencumbered real estate of at least double the value of the amount secured thereon, exclusive of buildings and improvements thereon.

"*Fifth*—The interest arising, either from the credit given on sales or from the loaning of the fund, to be paid semi-annually to the said Eleanor O. Hobbie during her natural life, for the support of herself and the support and education of her two daughters, Lydia and Orlanda.

"*Sixth*—Upon the death of the said Eleanor O. Hobbie said trustee shall transfer, convey, pay over and deliver to the said Albert G. Hobbie, or his heirs, the said trust fund, and the property, assets and securities arising out of or belonging to the same, excepting only therefrom the rents, issues, profits and interest paid to the said Eleanor O. Hobbie, as hereinbefore provided, and the costs, expenses and disbursements incurred in the execution of this trust.

"And the said Albert G. Hobbie hereby covenants with said trustee that the said premises are free and clear from all encumbrance, and that he is seized of a perfect,

sure and absolute title in fee simple, and has full power to convey the same, and the said premises against any person lawfully claiming or to claim the same he will forever warrant and defend. And the said William B. Ogden, as aforesaid trustee, hereby covenants and agrees to accept this trust, and to well and faithfully perform, fulfill and execute all and singular the trusts hereinbefore declared, according to the tenor and effect, true intent and meaning thereof.

"In witness whereof said parties have hereunto set their hands and seals the day and year first above written.

ALBERT G. HOBBIE,     [Seal.]

ELEANOR O. HOBBIE,     [Seal.]

W. B. OGDEN.           [Seal.]"

William B. Ogden having formally accepted the trust in the instrument, entered upon the discharge of his duties and sold the property for $20,000, and loaned the money without real estate security, in violation of the terms of the trust, by reason whereof it was lost. He died testate in the year 1877, and the executors and trustees of his estate are appellees. Albert G. Hobbie was married three times, and Eleanor O. Hobbie was his second wife. His third wife was Frances L. Hobbie, one of the appellants, and he died in 1868, leaving her as his widow, and William M. Hobbie issue of the first marriage, Lydia Harper Hobbie and Orlanda Reeves Hobbie children of the second marriage, who are mentioned in the trust deed, and Walter S. Hobbie and Isaac R. Hobbie children of the' third marriage, his heirs-at-law. The appellant Frances L. Hobbie is the sole executrix of his will, and he devised all his property to her for her life, subject to a charge for the nurture, support and education of said Walter S. Hobbie and Isaac R. Hobbie during their minority, with remainder to Walter S. Hobbie and Isaac R. Hobbie, or the survivor of them. After the divorce Eleanor O. Hobbie was married to Leander Read, and she died April 3, 1895, when the equitable life estate

created by the trust deed came to an end and the trust thereby declared ceased. After the death of Albert G. Hobbie his son William M. Hobbie died October 18, 1878, leaving a widow, Charlotte A. Hobbie. Orlanda Reeves Hobbie was married to Adelbert E. Brown, and died June 1, 1889, leaving her said husband and three children. Lydia Harper Hobbie was married to Pinkney Cone, and she is one of the appellants.

The appellant Frances L. Hobbie, the executrix of the last will of said Albert G. Hobbie, filed her bill in this case to recover the principal of the trust fund, with interest from the death of said Eleanor O. Read, making said heirs-at-law of said Albert G. Hobbie and the executors and trustees of the estate of William B. Ogden defendants. Those appellees who are executors and trustees answered, denying the right of the complainant to the trust fund or any part of it. The appellant Lydia Harper Cone answered with a like denial of any right to the fund, and filed her cross-bill. She was one of the children of the second marriage and one of those mentioned in the trust deed, and by her cross-bill she claimed that those who were entitled to the fund were herself and Isaac R. Hobbie and Walter S. Hobbie, who were the children of Albert G. Hobbie living at the death of Eleanor O. Read, when the life estate terminated. The executors and trustees of Ogden answered the cross-bill, alleging that the complainant therein was barred by a release executed in 1879 by her and her said mother, Eleanor O. Read, and her sister, Orlanda Reeves Brown. Upon a hearing the bill and cross-bill were both dismissed, and the complainant in each bill appealed to the Appellate Court, where the decree was affirmed.

The claim of the appellant Frances L. Hobbie is that the remainder after the life estate of Eleanor O. Read was vested in Albert G. Hobbie, who owned the fee and granted the life estate out of it, and that such remainder passed by his will. If this claim is valid and she is enti-

tled to the fund no defense was shown by the executors or trustees as against her right. The appellant Lydia Harper Cone insists that the remainder was a contingent one; that the words "or his heirs" are words of purchase and not of limitation, meaning the same as children, and not embracing all those designated by law to take the estate as heirs, and that only those children of Albert G. Hobbie who were living at the death of Eleanor O. Read were entitled to any portion of the fund. She also complains that the circuit court would not permit her to impeach the release set up by the executors and trustees, but if she had no right to the fund, or any part of it, the action of the court in that regard would do no harm.

The real estate conveyed by the trust deed was to be converted into personal property, but the principles applicable to the vesting of real estate apply generally in the case of personal property, and that feature of the case will make no difference in the decision. *Carper* v. *Crowl*, 149 Ill. 465.

There have been a great many cases in which the question whether a gift or grant was alternative in its character, or whether it was to take effect as such gift or grant in the future, has been considered, and the learned counsel who have argued this case have collected such cases and presented them with much ability. In those cases the well established rules have been applied in the construction of various instruments, but the proper rules to be applied are not in dispute. The words "his heirs," used in this instrument, are usually words of limitation, denoting heirs generally or the whole line of heirs in succession, and therefore limiting or marking out the estate granted; but they may be words of purchase where used to designate a particular person or persons who may stand in the relation of heirs at the happening of a certain event or at a certain period in the future, and the gift or grant may be alternative. So, also, adverbs of time ordinarily refer only to the time when the estate will vest

in possession and not when it will vest in interest; but if there is no direct gift or grant to take effect in the present, and the element of futurity is annexed to the substance of the gift itself, such terms may create an estate to commence in interest, and not in possession, merely, at such future time. These rules were considered in *Ebey* v. *Adams*, 135 Ill. 80, where a testator devised his property to his widow for life or during her widowhood, and at the termination of that estate he directed the estate to be sold and a certain balance of the proceeds to be distributed among his children who were named, or their heirs. The gift consisted only in the direction to distribute, and it was held that the fixed period for distribution was the time when the legacies would vest, and that they were alternative as between the children and their heirs.

It is argued that the term "or his heirs" meant that the re-conveyance should be to Albert G. Hobbie, if he was living, or to his heirs if he was dead,—and that is the evident purport of the language, since he could have no heirs if he should be living. But such words or equivalent language do not, in all cases, mean either a future or alternative grant, as may be seen from the decision in *Riggin* v. *Love*, 72 Ill. 553. In that case there was a deed conveying premises to Eliza McGilton during her natural life, and at her death unto her husband, Andrew McGilton, and in case of his death before hers, then unto his heirs-at-law. Andrew McGilton died testate in the lifetime of his wife, and the words "heirs-at-law," although in the alternative provision, were construed not to be words of purchase but words of limitation, because the property conveyed to him would have descended precisely as described by those words. It is only where the future period is annexed to the grant that such terms would make it alternative.

Another case much relied upon is *Strode* v. *McCormick*, 158 Ill. 142, where a deed was made to trustees upon a settlement with the grantor's wife in trust to pay the

rents and profits to her for her life, and at her death
to sell the property and divide the proceeds among the
children of the marriage.   In that case the word "heirs"
was not used but the word "children," which was a desig-
nation of particular persons, and there was no direct gift
or grant to them, but the grant consisted only in the di-
rection to sell the lot and divide the proceeds.   Unlike
this case, the grantor parted with his whole title, and
granted to his wife an equitable estate for life and a re-
mainder to such children as might be living at the period
of distribution.

The other cases cited and commented upon by counsel
announce the same principles, but none of them, so far
as we can see, can be applied to this case, for the im-
portant reason that this trust deed is a grant of the life
estate only, and not of the remainder, and that it did not
operate to grant the whole estate of Albert G. Hobbie
in the premises.   He was the owner of the fee, and was
required by the decree of the court of common pleas to
provide for the maintenance and support of his divorced
wife, and to enable her to support and educate the chil-
dren of the parties in her custody.   The court had no
jurisdiction to provide for a disposition of his property,
or to compel him to make a provision for his heirs or a
grant to them, and it made no attempt to do so.   The de-
cree was destroyed in the Chicago fire, but its purport is
recited in the trust deed.   The trust deed made under the
compulsion of that decree was not made for the purpose
of disposing of the title to the property, but to carve out
an estate for the life of the divorced wife.   The convey-
ance to the trustee was upon a trust which would expire
with the death of the wife, and if, after complying with
the decree, it had stopped there, the trust having ended,
the trustee would hold the legal title merely as trustee
for the grantor.   The trust would be a naked one, and a
re-conveyance would be necessary merely because the
legal title had once passed for the purpose of a trust and

the premises had been converted into personal property. Such a re-conveyance would be a matter of right, and if the grantor should be living he would be entitled to it, and if not living it would be made to his heirs. There is no grant to anybody of the estate remaining after the life estate, but the sixth clause is a provision for a re-conveyance to Albert G. Hobbie if living, or to his heirs if he should be dead. It is nothing more than a stipulation that the legal title shall be re-conveyed after the purpose of the trust has been fully accomplished, and it provides for exactly what the law would require if it had not been inserted. The equitable title remaining in the grantor would descend by law to his heirs, and the conveyance provided for would only be necessary to make that a legal estate in him or them which was already vested in them as an equitable one. He did not thereby grant a remainder to himself or some other person or persons in the alternative, but made the provision, which is not uncommon in the case of a trust for a special or limited purpose, that after the trust should be executed there should be a re-conveyance of the legal title.

It follows from what has been said that we think the cross-bill of Lydia Harper Cone was properly dismissed, and we approve of such dismissal and of the judgment of the Appellate Court so far as it affirmed the same.

The court erred in dismissing the bill of Frances L. Hobbie, the executrix, and the judgment of the Appellate Court affirming the decree in that respect is reversed, and the decree of the circuit court dismissing said bill is also reversed, and the cause is remanded to the circuit court with directions to enter a decree in accordance with the prayer of said bill.                    *Reversed and remanded.*