## Carrie Monast v. Albert Letourneau.

1. Shelley's Case—*Application of the Rule in.*—If a legal estate is given to A, in trust for B, for life, and the legal remainder to the heirs of B at his death, the rule in Shelley's case can not apply, as the legal and equitable estates can not so coalesce as to give B either a legal or equitable fee.

Bill of Interpleader.—Appeal from the Circuit Court of Kankakee County; the Hon. Robert W. Hilscher, Judge, presiding. Heard in this court at the October term, 1899. Affirmed. Opinion filed February 1, 1900.

W. R. Hunter, attorney for appellant.

T. F. Donovan and T. W. Shields, attorneys for appellee.

Mr. Justice Dibell delivered the opinion of the court.

This was a bill filed by St. Viateur's College, a corporation located in Kankakee county, against the heirs of Noel Vasseur and others, asking that defendants be required to interplead, and that a decree be entered determining to whom of said defendants the college should pay a fund of $1,066.67 remaining in its hands, with certain back interest thereon. By proper pleadings defendants set up the several claims to said fund hereinafter stated. The court heard proofs and entered a decree. The facts are undisputed, and are as follows:

On March 24, 1876, Noel Vasseur sold and conveyed to the college certain real estate in Kankakee county for $3,200. The college paid him in cash $2,133.33 thereon, and for the remaining $1,066.67 executed and delivered to Noel Vasseur an instrument, the body of which was as follows:

"These articles of agreement, made this 24th day of March, 1876, between the corporation of St. Viateur's College of Bourbonnais, Illinois, of the first part, and Noel Vasseur and Fannie Vasseur, his wife, and the heirs of the said Noel Vasseur, of the second part, witnesseth, that whereas, the said Noel Vasseur and Fannie Vasseur have this

day executed and delivered to said corporation their deed, thereby conveying to said corporation certain lots and parcels of land in the village of Bourbonnais, Illinois, as described in the said deed, for the consideration of $3,200, of which consideration the said corporation has this day paid the sum of $2,133.33, leaving unpaid the sum of $1,066.67, as representing the dower interest of said Fannie Vasseur in the said lands, the said first party herein, in and for consideration of the aforesaid conveyance, does hereby covenant and agree with the second parties to pay to them the sum of $1,066.67 aforesaid, with the interest thereon at the rate of ten per cent per annum in the manner following, to wit :

The said first party shall pay to the said Noel Vasseur, on the 24th day of March of each and every year during his natural lifetime, the interest of the said last named sum, at the rate aforesaid, to wit, the sum of $106.67, and in case of the death of the said Noel Vasseur, leaving the said Fannie Vasseur surviving him as his widow, then said first party shall pay to the said Fannie Vasseur from and after the death of said Noel Vasseur, and for and during her natural life, on the 24th day of March in each year, the said sum of $106.67 interest aforesaid, and at the death of the survivor of said husband and wife, then the said first party shall pay to the heirs of said Noel Vasseur the said sum of $1,066.67, with all interest which may have accrued and then remaining unpaid thereon, at the rate of ten per cent per annum.

That said interest and principal shall be payable at said first party's office in the village of Bourbonnais, Ill.

The payment of the aforesaid interest and principal, according to the foregoing terms, is secured by the trust deed, executed by said first party, of the lands above referred to, bearing even date herewith."

The college secured the articles by a trust deed of said premises to George R. Letourneau, which recited that said instrument above set out was attached thereto. Said trust deed was evidently written upon a printed form, and contained provisions that in case of default in the payment of said moneys or interest, or any part thereof, the trustee might take possession and sell the premises and after paying expenses of sale, taxes, etc., " pay the principal and interest due on said articles according to the tenor and effect thereof," and, in another place, that in case of default in the payment of said

installments, or any part thereof, or interest, "the whole of said principal of said sum and the interest to the time of the sale, shall, at the option of the legal holder of said articles, become due and payable, and the said premises may be sold as if said indebtedness had matured." It also provided for a successor in trust.

Noel Vasseur died in 1879, leaving the following heirs at law: Carrie Monast, a daughter; Francis N. and Edward Perry, only children of Hattie Perry, a deceased daughter; Frederick Vasseur, a son; and Albert Letourneau, only child of Lucy Letourneau, a deceased daughter. Noel Vasseur left a last will, by which he gave all his property, real and personal, and his rights and credits of every name and nature which he might have at his death, to his son Frederick, subject to the legal rights and claims of testator's widow, Fannie. Frederick was named as executor. In 1884 Frederick Vasseur died testate, making his sister, Carrie Monast, his sole legatee and executrix. Fannie Vasseur, widow of Noel Vasseur, died February 5, 1899, and Edward Letourneau became administrator of her estate. The manual possession of the instrument above set out passed to Frederick when his father died, and when Frederick died it passed to Carrie Monast.

Carrie Monast claimed that the rule in Shelley's case applies to the contract above set out; that the words therein, "heirs of said Noel Vasseur," are words of limitation and not of purchase; that Noel Vasseur was therefore the owner of the entire principal fund; that by his will it passed to Frederick Vasseur; that by the will of the latter it passed to Carrie Monast. Francis N. and Edward Perry filed a disclaimer, admitting that Carrie Monast was sole owner of the fund, and asking that if the court found they had any interest therein, it be ordered paid to Carrie Monast. Albert Letourneau claimed that the principal fund belonged to those who, at the death of the widow, Fannie, should answer the description of "heirs of Noel Vasseur," and that as Frederick died before the widow, he took no interest which could pass by will to Carrie Monast, and therefore

Albert Letourneau claimed for himself one-third of the fund, and that Carrie Monast was only entitled to one-third. Edward Letourneau, administrator of the estate of Fannie Vasseur, deceased, claimed the $93.33 of interest earned but not due at the date of Fannie Vasseur's death. The decree gave Carrie Monast one-fourth in her own right, one-fourth in right of Frederick Vasseur, and one-fourth in right of the Perry children, and gave Albert Letourneau the remaining one-fourth; and denied the claim of Fannie Vasseur's administrator to the back interest. From that decree Carrie Monast prosecutes this appeal, claiming the entire fund, and Albert Letourneau assigns cross-errors, claiming one-third instead of one-fourth.

1. In our judgment the rule in Shelley's case does not apply to the instrument in controversy. There was no promise to pay the principal fund to Noel Vasseur and his heirs. There was no promise to pay any part of the principal fund to Noel Vasseur at all. There were three sets of persons named as the party of the second part, and to whom the promises were made, viz. : Noel Vasseur, Fannie Vasseur and the heirs of Noel Vasseur. There was first a promise to pay Noel Vasseur $106.67 on the 24th day of March of each and every year during his natural life, that sum being the interest on the principal fund; there was, secondly, a promise to make like annual payments of $106.67 to his wife from the date of his death during the rest of her life, if she survived her husband; and thirdly, a further promise after the death of both, to pay the heirs of Noel Vasseur the principal fund of $1,066.67. This is very different from Hobbie v. Ogden, 178 Ill. 357, where the promise was to pay the trust fund " to Albert G. Hobbie or his heirs." This promise, as to the principal fund, is to pay the heirs only, and not to pay Noel Vasseur at all. In no contingency was the principal ever to be payable to Noel Vasseur. The words " the heirs of said Noel Vasseur " must be held to designate and apply to those who should answer that description at the death of Noel Vasseur; to those appointed by law to succeed to his estate if he died intestate.

(Kellett v. Shepard, 139 Ill. 433.) We are of opinion that the fact that this fund arose from the sale of real estate is unimportant; and that as to the question here involved the case stands in the same position as if Noel Vasseur had placed that amount of money in the hands of a trustee appointed by him, and had taken from the trustee an obligation to pay the income to himself for life, and thereafter to his wife for life if she survived him, and then to pay the principal fund to those who at his death would take his estate if he died intestate. We see no reason why the principle stated in Glover v. Condell, 163 Ill. 566, 588, does not apply, viz.:

"If the legal estate is given to A (the college) in trust for B (Noel Vasseur) for life, and the legal remainder to the heirs of B (the heirs of Noel Vasseur) at his death, the rule in Shelley's case can not apply, as the legal and equitable estates can not so coalesce as to give B (Noel Vasseur) either a legal or equitable fee."

We are of opinion that after Noel Vasseur placed this fund in the hands of the college, as trustee upon these express trusts, he no longer owned the principal fund, and could not revoke the trust nor release the trustee from its execution. If he had power to revoke the trust he never did so, and his will contains no reference thereto. The language of the trust deed securing said articles does not require a different construction. In case of foreclosure for non-payment of interest the moneys would not be payable to Noel Vasseur. The articles recite that the principal of $1,066.67 represents the dower interest of Fannie Vasseur in said lands, and to pay the moneys to Noel Vasseur would defeat the evident purpose to protect her dower, which we may well assume she released because this arrangement was made. Moreover, the trust deed did not provide that in case of foreclosure the moneys should be paid to Noel Vasseur. Its direction to the trustee, in case of foreclosure, was "to, pay the principal and interest due on said articles according to the tenor and effect thereof." If at the time of such foreclosure Noel Vasseur and Fannie Vasseur were both dead, the payment, according to said articles, would be to

the heirs of Noel Vasseur; but if either Noel or Fannie Vasseur were then living, the trustee could not pay the principal to them, because the articles did not provide it should ever be paid to them.   In such case after foreclosure it would be the duty of the trustee in said deed to apply to a court of equity for the appointment of another trustee in place of the college, who would receive and invest the principal fund upon the same trusts already fixed.   The decree of the court below enforces the trust Noel Vasseur established and the contract the college made in exact accordance with its terms.   The position of appellant would prevent a father from creating such a trust for the benefit of his heirs unless he chose to name them specifically.

2.   If the rule in Shelley's case be applied to the interpretation of said articles, yet that rule is subject to the qualification that, though often applied to grants of personalty by way of analogy, for purposes of construction, yet when so applied it yields more readily to the apparent intention of the grantor than it does in grants of realty.   (Glover v. Condell, *supra.*)   The words in said instrument, "at the death of the survivor of said husband and wife, then the said first party shall pay to the heirs of said Noel Vasseur the said sum of $1,066.67, with all interest which may have accrued and then remaining unpaid thereon, at the rate of ten per cent per annum," express the intent of the college, and also the intent of Noel Vasseur, who made the arrangement and procured the execution of the articles.   We think the intent of both Noel Vasseur and the college is clear, and has been carried into effect by the decree.

3.   The manual possession of the articles was immaterial. There were several beneficiaries thereunder.   Only one beneficiary at a time could be custodian of the instrument. Whichever one had it necessarily held it for the benefit of all.   It was consistent that Noel Vasseur should first hold it, as he was first to receive benefits under it.   After his death it might properly have been lodged with his widow, the next one entitled to moneys thereunder; but Frederick Vasseur was one of the beneficiaries, and his possession of

the instrument could not be hostile either to Fannie Vasseur or to his co-beneficiaries in the principal fund; and the same is true of the later possession by Carrie Monast, both because she was one of the beneficiaries in her own right, and because she acquired the rights of Frederick Vasseur by his will.

4. The death of Noel Vasseur fixed the persons who were his heirs, and who were ultimately to take, and their interests were then vested, though the time when they should take was deferred by the fact that Fannie Vasseur survived her husband. Hence Frederick Vasseur acquired a vested legal interest in the principal fund, and it accordingly passed to his legatee, Carrie Monast. The decree is therefore affirmed.