EMMA WADHAMS GREEN, Appellant, vs. THE OLD PEOPLE'S HOME OF CHICAGO et al. Appellees.

*Opinion filed June 24, 1915—Rehearing denied October 7, 1915.*

1. WILLS—*rules as to vesting of devises of land apply, generally, to gifts of personal property.* In Illinois the general principles applicable to the vesting of devises of real estate apply, generally, to gifts of personal property.

2. SAME—*residuary clause must be kept in mind in construing will.* The residuary clause of a will must be kept in mind in construing a will, as the intention of the testator as expressed in the whole will must govern.

3. SAME—*distinction between words of limitation and words of condition.* Words of limitation in a will mark the period which is to determine the estate, whereas words of condition denote the circumstances or contingency that may defeat the estate in the intermediate time.

4. SAME—*distinction between estate upon condition subsequent and upon conditional limitation.* An estate upon condition subsequent does not divest the donor of his reversionary interest reserved to the donor to re-invest in him or his heirs upon breach of the condition, but a gift or a devise upon a conditional limitation divests the donor of his reversionary interest at once and vests it in the third party in whom the estate is to vest upon the happening of the contingency that is to defeat or terminate the intermediate estate.

5. SAME—*difference, as to forfeiture, between estates upon a condition subsequent and upon conditional limitation.* In an estate upon condition subsequent a breach of the condition will not, alone, defeat the estate without a declaration of forfeiture by the donor or his heirs and a re-entry by them, whereas in an estate upon conditional limitation a breach of the condition of itself defeats the estate and *ipso facto* vests it in the third party, who, alone, can take advantage of the breach.

6. SAME—*when a gift to charity is upon condition subsequent.* Where a gift to a charitable institution is in trust for a specific purpose, without words of condition or limitation to denote the character or duration of the estate or the time when it shall terminate, but there is a subsequent clause providing for a forfeiture of the gift in case the institution fails to carry out the objects of its organization or to promote the object of the gift, the estate is upon conditional limitation.

7. SAME—*what provision of a will is intended to secure the application of funds to specific purposes of bequests.* Where a will contains numerous bequests in trust to charitable institutions, a subsequent clause making the bequests void if such institutions "shall at any time fail or cease to carry out effectively the purposes for which they were, respectively, organized, and to promote which the bequests to them, respectively, are by me herein made and given," is intended to insure the application of the funds to the several specific purposes for which they were made.

8. SAME—*general rule as to disposition of lapsed legacies.* As a general rule, where specific bequests are made by a will containing a residuary clause and one or more of the specific bequests fail and thereby lapse, the lapsed legacies are distributed as part of the residuary estate; but this rule cannot be applied where to do so would defeat the obvious intention of the testator as expressed in the whole will.

9. SAME—*when lapsed legacy will not pass under the residuary clause.* Where the only residuary legatee who can, without violating the rule against perpetuities, take forfeited specific bequests to charitable institutions is, itself, one of such institutions and its specific bequest is subject to the same condition as the others with reference to forfeiture, the specific legacies forfeited for breach of the condition attached to them will go to the heir-at-law of the testator as intestate property and will not pass under the residuary clause.

10. SAME—*when allegation that reasonable time has elapsed to carry out charitable bequest is unnecessary.* In a bill by an heir-at-law to declare a forfeiture of a bequest in trust to a charitable institution, an allegation that a reasonable time has elapsed for carrying out the purposes of the bequest is unnecessary, where the specific allegations of the bill show that more than twenty years have elapsed since the institution received the funds and that it has never applied them to the purpose for which given.

11. SAME—*when gifts to charitable institution are for specific purposes.* Where one clause in a will gives a certain fund to a charitable institution in trust for investment and re-investment, the annual income to be used in defraying the current expenses "for the home for old men to be erected as hereinafter provided," and a later clause gives the same institution a certain sum in trust for the erection of a building for a "home for old men of American birth," both bequests are in trust for the specific purposes mentioned and not for investment in the general funds of the institution.

APPEAL, from the Branch "B" Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. LOCKWOOD, HONORE, Judge, presiding.

COBURN & BENTLEY, for appellant.

CHARLES R. WEBSTER, for appellees.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Appellant filed her bill in chancery in the circuit court of Cook county against appellees to declare a forfeiture of certain bequests made to the board of trustees of the Old People's Home of Chicago by the last will and testament of Seth Wadhams, deceased, and to have the proceeds of such bequests declared a trust fund in the hands of the trustees of said Old People's Home for her use and benefit and for an accounting of the same. The circuit court sustained a demurrer to the bill. Appellant elected to stand by her bill and the same was dismissed for want of equity. She then sued out a writ of error from the Appellate Court for the First District, which affirmed the decree of the circuit court. A certificate of importance and an appeal were granted by that court, and the case is now in this court pursuant to such certificate of importance and appeal.

The bill charges that appellant is the sole heir of Seth Wadhams, late of DuPage county, who departed this life, testate, on February 6, 1888; that his will was duly admitted to probate in the county court of that county, and that the value of his estate at the time of his death was approximately one million dollars. A copy of the will is attached to the bill, the material provisions of which are the following:

By the first clause the testator directed his executors to take possession of all his property, real and personal,

and pay his debts and funeral expenses and the specific legacies. By the second clause he empowered his executors to sell and convey any real estate and dispose of any personal property in settling his estate. The third clause is as follows:

*"Third*—I order and direct my executors to sell, as soon after my death as they may deem expedient, my homestead, known as White Birch, and described as blocks three (3), four (4), nine (9) and ten (10) in D. N. Burnham's addition to Cottage Hill, in said PuPage county, and the proceeds to be distributed as follows, to-wit: One-half part thereof to the managers of the Chicago Nursery and Half-Orphan Asylum, to have and to hold to them and their successors in office, in trust, however, to and for the following uses and purposes, namely, in trust, to hold, manage, invest and control the same and the same from time to time to re-invest, and the annual income thereof to use and expend in defraying the current expenses of said asylum; and the remaining one-half part of said proceeds to the board of trustees of the Old People's Home of Chicago, Illinois, to have and to hold. the same to them and their successors in office, in trust, to manage, invest and control the same and the same from time to time to re-invest, and the annual income thereof to use and expend in defraying the current expenses of the home for old men to be erected as hereinafter provided. Further, I hereby direct that my said homestead, known as White Birch, shall be sold to Mrs. Aurelia R. King, of Chicago, Illinois, for the sum of $20,000, if she desires to purchase the same. In case the said Mrs. Aurelia R. King shall decline to purchase said homestead, then the same may be sold to any child or children of the said Mrs. Aurelia R. King for the said sum of $20,000."

By clauses 4 to 31, inclusive, the testator made specific bequests to Frederick E. Hammond, (known as Frederick E. Wadhams,) and to various charitable institutions and

individuals, after which follow the thirty-second, thirty-third and thirty-fourth clauses, which read as follows:

"*Thirty-second*—I give and bequeath to the board of trustees of the Old People's Home of Chicago, Illinois, the sum of $20,000, to have and to hold the same to them and their successors in office, in trust, however, to use and expend the same in the erection of a suitable building, the same to be used, managed and controlled by the board of trustees as a home for old men of American birth, only, separate and apart from said Old People's Home. The construction and design of said building to be under the charge and supervision of said board of trustees, and to be erected upon a lot adjacent to said Old People's Home or any other lot now or to be owned by said trustees.

"*Thirty-third*—All the rest, residue and remainder of my estate I give, devise and bequeath as follows, to-wit: One-half to the Chicago Relief and Aid Society of Chicago, Illinois, a corporation duly established by law, to have and to hold to said corporation and its assigns forever, but in trust, however, to hold, manage, invest and control the same and the same from time to time re-invest, and the income thereof to use and expend for the objects and purposes for which said society was established; and the remaining one-half to Frederick Eugene Hammond, (now known as Frederick E. Wadhams,) absolutely and forever.

"*Thirty-fourth*—In case any of the institutions or corporations which under and by virtue of this my last will shall receive any portion of my estate shall at any time fail or cease to carry out effectively the objects and purposes for which they were, respectively, organized, and to promote which the bequests to them, respectively, are by me herein made and given, then it is my will, and I do hereby declare, that the bequests made in this will to any such institution or corporation shall be held inoperative and void and for that cause be and become canceled, revoked and

annulled, and the same shall be held and disposed of as a lapsed legacy."

The bill charges that the executors received one-half of the proceeds from the sale of the White Birch homestead, or $10,000, and on or about June 24, 1890, delivered to the then acting trustees of the Old People's Home such sum in trust, for the charitable uses and purposes expressed in the will; that the executors also received, on or about June 23, 1890, the further sum of $20,000, which they turned over to the trustees of the Old People's Home under and by virtue of the thirty-second paragraph of the will; that the Old People's Home of Chicago is a corporation organized under the laws of the State of Illinois, not for pecuniary profit but for the charitable purpose of providing a home for old people; that the trustees thereof, and their successors, have never used the said bequests, or either of them, to carry out effectively the objects and purposes for which the bequests were made, but, on the contrary, immediately placed said funds with some financial institution, trust company or bank, and caused them to be invested and re-invested in various securities during the twenty-two years last past; that they have never built out of the fund of $20,000 so bequeathed the home for old men of American birth, separate and apart from the Old People's Home, as provided in the will, nor have they used the proceeds of the said $10,000 for the charitable use expressed in the will but still retain the same, so that the funds in the hands of the bank or financial institution, exclusive of fees paid to said trust company or financial institution, on May 18, 1911, amounted to the sum of $71,-900; that the Old People's Home and the trustees thereof have secured from various sources, for the charitable purpose of providing a home for indigent old people, a large fund, exceeding one million dollars, and have used the same exclusively to construct an extensive building for indigent old ladies, but have built no building or buildings or pro-

vided any support for old men of American birth either in such buildings already built or separate and apart from the Old People's Home buildings established by them for old ladies, nor have they provided any support for old men of American birth, as provided in the will, nor have they used the bequests or legacies therein given them in accordance with the intent of the testator, whereby appellant, as his heir, has the right to declare, and has declared, the gifts terminated, lapsed and canceled.

The bill further charges that the bequests have, by lapse of time and the failure to use the money for the purpose provided and by reason of the statute against perpetuities, lapsed and become a trust fund in the hands of the Old People's Home and its trustees for appellant, as the sole heir of said Seth Wadhams, deceased; that in 1870 she married and left home, and since that time has lived a great portion of the time in other States and knew but little of the details of the said will; that for many years she was in affluent circumstances but has since become impoverished, and until recently, or about April 15, 1911, did not know that the Old People's Home, and the trustees thereof, had failed and refused to carry out the terms of the will, and that old men of American birth had not, during the last twenty-two years, received any benefit from the said funds, until she, being in dependent circumstances and with no one upon whom she could depend for a livelihood, becoming old and in poor health and incapacitated from performing labor, applied for admission to and assistance from the said Old People's Home and was refused assistance, except a small stipend, unless she would release her claim, as the heir of her father, to the said fund, which caused her, she not being well versed in such matters, to fully investigate and discover her just rights in the premises; that on February 21, 1912, she caused notice to be served upon the Old People's Home and its officers and trustees, to the effect that she was the sole heir of said

Seth Wadhams, deceased, and did thereby declare the bequests made by her father, the said Seth Wadhams, in his last will and testament, to have lapsed and to have become null and void under and by virtue of the terms of his will, and that she demanded of the said Old People's Home, and its officers and trustees, that they account to her for the said bequests, together with the interest earned thereon, which they fail and refuse to do and deny that the bequest has lapsed, etc. The bill makes the Old People's Home of Chicago and its trustees parties defendant, and prays that the funds so received by them may be decreed a trust fund in their hands for the use and benefit of appellant and that the same be paid over to her, or that the securities in which such funds are invested, properly indorsed, be turned over to her, and that she may have such other and further relief in the premises as equity may require, etc.

The various questions raised and elaborately discussed by counsel for the respective parties may conveniently be considered and treated under the following heads: (1) The nature of the right or estate created by the third and thirty-second clauses of the will; (2) the disposition of such bequests in the event they are forfeited for failure to comply with the provisions of the third, thirty-second and thirty-fourth clauses of the will; and (3) the sufficiency of the allegations of the bill to show cause for forfeiture under the provisions of the thirty-fourth clause. A consideration of these questions will dispose of substantially all of the contentions made by the respective parties.

Appellant claims that by a proper construction of the will the bequests in the third and thirty-second clauses are gifts upon condition subsequent, subject to forfeiture under the thirty-fourth clause for failure to devote them to the uses and purposes for which they were made, and that upon such forfeiture being declared they revert to appellant, as sole heir-at-law of the testator, for the reason that

they could not vest in the residuary legatees without violating the rule against perpetuities. Appellees insist the bequests are gifts upon condition with a limitation over in favor of the residuary legatees, and hence estates upon conditional limitation; that the entire interest in such funds passed out of the testator by his will and no right or possibility of reverter remained in him or descended to his heirs; that as one of the residuary legatees, the Chicago Relief and Aid Society, is a charity, such gifts over do not violate the rule against perpetuities as to it although they may be void as to Frederick E. Wadhams under such rule, and that in the event of a forfeiture the Chicago Relief and Aid Society, as such residuary legatee, takes the whole amount of the estate so given to the Old People's Home.

The rule in this State is that the general principles applicable to the vesting of real estate apply, generally, to gifts of personal property, (*Hobbie* v. *Ogden,* 178 Ill. 357; *Carper* v. *Crowl,* 149 id. 465; *North* v. *Graham,* 235 id. 178;) and the fact that the gifts in question are of personal property instead of real estate will therefore make no difference in our consideration of this question. In nearly all the adjudicated cases treating of this subject the grant by deed or devise or bequest by will has been in direct terms, so worded that the construction of the terms of the grant, devise or bequest was necessary. In the case at bar the bequests under consideration, while they were undoubtedly bequests on condition by reason of the thirty-fourth clause of the will, can in no event be considered bequests with a limitation over without the aid of clause 33,—the residuary clause. The main purpose of the residuary clause in the will in question was, as in all wills, to dispose of the residuary estate, and it is necessary to keep this in mind, as the intent of the testator as expressed in the language of the will must govern.

In speaking of the two kinds of estates here in controversy, Chancellor Kent says: "Estates upon condition are such as have a qualification annexed to them, by which they may, upon the happening of a particular event, be created or enlarged or destroyed;" (4 Kent's Com.—14th ed.—122;) that they may be either precedent or subsequent; that "subsequent conditions are those which operate upon estates already created and vested and render them liable to be defeated;" (Ibid. 126;) and that "if the condition subsequent be followed by a limitation over to a third person in case the condition be not fulfilled or there be a breach of it, that is termed a conditional limitation." (Ibid. 127.) The words of limitation mark the period which is to determine the estate, and the words of condition denote the circumstances or contingency that is liable to defeat the estate in the intermediate time.

The distinction between an estate upon condition subsequent and upon conditional limitation is this: An estate upon condition subsequent does not divest the donor of his reversionary interest, which by the terms of the gift or devise is reserved to the donor to re-invest in him or his heirs upon breach of the condition, while a gift or devise upon conditional limitation divests the donor of his reversionary interest at once and vests it in the third party in whom it is to vest upon the happening of the contingency that is to defeat and terminate the intermediate estate. Another important distinction is, that a breach of condition, alone, will not defeat the former estate without a declaration of forfeiture by the donor or his heirs and a re-entry by them, while in the latter case a breach of condition, alone, will defeat the estate and *ipso facto* vest it in the third party. In the one case nobody but the donor or his heirs can take advantage of the breach and a third party cannot; in the other, no one but the third party can take advantage of the breach and the donor·or his heirs

cannot. (4 Kent's Com. 127; *Battle Square Church* v. *Grant,* 3 Gray, 142; *Mott* v. *Danville Seminary,* 129 Ill. 403; *North* v. *Graham, supra.*) Tested by these rules, it is at once clear that the estate created is upon condition subsequent and not a conditional limitation. The bequests in the third and thirty-second clauses of the will are not to the Old People's Home so long as it uses them for the certain purposes therein specified and then to another or some other person or corporation, but, on the contrary, the bequests are made without either words of condition or of limitation to denote the character or duration of the estate or the time when it shall terminate. If it were not for the provision for a forfeiture in the thirty-fourth clause the estate could not be defeated or terminated, no matter how flagrant the violation of the terms of the bequest, but the remedy would be by bill in equity to compel an observance of the terms of the trust. (5 Am. & Eng. Ency. of Law,—2d ed.—915; *Mills* v. *Davison,* 54 N. J. Eq. 659; 35 Atl. Rep. 1072; *Strong* v. *Doty,* 32 Wis. 381.) The provisions of the thirty-fourth clause, therefore, are words of condition and not of limitation, as they mark and denote the acts, or omission to act, which shall operate to revoke, annul and defeat the estate granted. *Battle Square Church* v. *Grant, supra,* does not oppose this view. In that case there was a gift over to a designated nephew and his heirs in case of failure to comply with the condition of the gift, which was a different bequest from those under consideration in this case.

As to the next contention, appellant insists that as the gifts are upon condition subsequent the title never passed out of the donor and his heirs, and upon a forfeiture being declared the title is re-invested in appellant, as the sole heir of Seth Wadhams, deceased. Appellees insist that by reason of the direction that the same shall be disposed of as a lapsed legacy, upon a forfeiture being declared such lapsed legacy falls into the residuary estate and goes to the

residuary legatees, who, alone, can declare and enforce a forfeiture. A consideration of these contentions involves the question as to the ultimate disposition to be made of the legacies in the event of forfeiture.

The thirty-fourth clause provides that in case any of the institutions or corporations receiving any portion of the testator's estate "shall at any time fail or cease to carry out effectively the objects and purposes for which they were, respectively, organized, and to promote which the bequests to them, respectively, are by me herein made and given," such bequests shall be held inoperative and void and become canceled, revoked and annulled and disposed of as a lapsed legacy. The purpose of this provision is apparent. Its object is to insure the application of the funds to the several specific purposes for which the bequests were made. This the testator sought to accomplish by providing that either a failure to devote the funds to the purpose for which they were severally given or a cessation of the purpose for which the corporations were organized should operate as a forfeiture of such bequests, and by the same clause he undertook to provide for the manner of the distribution of such funds in case of a forfeiture. For this reason the cases cited by appellant on the question of re-investure of the title in the donor or his heirs in case of forfeiture are not in point. In those cases the conditions were expressed in deeds of conveyance, and consequently no disposition was made of the reversionary interest, which necessarily must have remained in the grantor or his heirs, while in this case, in the same clause in which the testator provides for a forfeiture, he also undertakes to make a disposition of the reversionary interest remaining in him, by providing that it shall be disposed of as a lapsed legacy. They therefore throw but little light on the main question in this case, which is, what did the testator mean and intend by such provision in the thirty-fourth clause of his will?

269 — 10

The situation, then, may be briefly summarized as follows: The testator made specific bequests that would be forfeited in the event of the happening of two contingencies: (1) If the beneficiaries ceased doing business or failed to effectively carry out the purposes for which they were organized; or (2) if they should fail to carry out the objects and purposes to promote which the bequests were made, then such bequests were to be void and disposed of as lapsed legacies.

A lapsed legacy goes either to the heir-at-law as intestate property or to the residuary legatee. The rule in this State is, that where specific bequests are made and there is also a residuary clause disposing of all the rest, residue and remainder of the estate, and for any reason any one or more of the specific bequests fails or is rendered void and thereby lapses, such lapsed legacy falls into and is disposed of as a part of the residuary estate. (*Crerar* v. *Williams*, 145 Ill. 625; *Dorsey* v. *Dodson*, 203 id. 32.) But this rule, like all others, as held in the above cases, is based upon the presumed intention of the testator, and should never be applied when to do so will defeat the obvious intent of the testator as expressed in the will. It is founded upon the presumption that the intention of the testator in taking the property away from the residuary legatee was only for the purpose of the particular legatee, and that upon the failure of such purpose he intended the residuary legatee should have it. (40 Cyc. 1944.) But this presumption will not prevail where the testator has by apt words or clear implication excluded such lapsed or ineffective legacy from the operation of the residuary clause. In such case the lapsed or void legacy goes to the heir-at-law of the testator as intestate property. (40 Cyc. 1948.) It is the cardinal rule in construing wills that the intention of the testator will control. To this rule all others are subordinate. (*Morrison* v. *Tyler*, 266 Ill. 308; *Howe* v. *Hodge*, 152 id. 252.) And this intention is to be ascer-

tained from a consideration of the whole will and all its
parts. (*Black* v. *Jones,* 264 Ill. 548; *Morrison* v. *Tyler,*
*supra.*) Guided by these cardinal rules and principles and
looking at the will as a whole and considering all its parts,
we are satisfied that it was not the intention of the testa-
tor, by the direction that such forfeited bequests should be
disposed of as lapsed legacies, to thereby invest the residu-
ary legatees with the reversionary title to such bequests
in case of forfeiture. To do so would render the will in
some of its most essential provisions inoperative and void.
Under the will the two residuary legatees, the Chicago Re-
lief and Aid Society and Frederick E. Wadhams, are each
to share equally in the residuary estate. The gift over,—
conceding it to be a gift over,—in so far as Frederick E.
Wadhams is concerned, is void under the law concerning
perpetuities, as it may not vest within the life of a per-
son in being at the time of the death of the testator and
twenty-one years and nine months thereafter. (*Johnson* v.
*Preston,* 226 Ill. 447.) The gift can only be sustained as
to the other residuary legatee upon the ground that it is a
gift to a charity.

By virtue of the provisions of clause 33 the Chicago
Relief and Aid Society is one of the beneficiaries under
the will as residuary legatee. It is described as a corpo-
ration, and the bequest made to it is made for a specific
purpose, "in trust, however, to hold, manage, invest and
control the same  *  *  *  and the income thereof to use
and expend for the objects and purposes for which said
society is established." Clause 34, which provides for the
forfeiture of any and all bequests upon the conditions
named therein, follows clause 33,—the residuary clause.
While the relative positions of the different clauses in a
will are not always controlling, the fact that here the
clause declaring a forfeiture follows the residuary clause
seems to emphasize and make clear the intent of the tes-
tator that the bequest to the Chicago Relief and Aid So-

ciety, as well as the bequests to the Old People's Home
and the other charitable institutions mentioned in various
clauses of the will, is subject to forfeiture under clause 34
of the will, but to hold that upon such forfeiture being
declared it would re-take the same as such residuary lega-
tee would render. the whole of clause 34 inoperative and
void as to this institution or corporation. We find nothing
in the will to indicate. it was the intention of the testator
to exempt the Chicago Relief and Aid Society from the
operation of the provisions of clause 34 of the will, nor
do we think it was the intention of the testator that the
same should be held ineffectual and void as to it. The
controlling intention of the testator, as disclosed from a
consideration of that clause in connection with the other
clauses of the will, was to make the bequests to. all the
charitable institutions mentioned in the will, including the
residuary legatee, the Chicago Relief and Aid Society, sub-
ject to forfeiture for a failure to devote such bequests to
the objects and purposes for which they were made or
given. Such being the intention of the testator, it is our
duty to give effect to that intention when to do so will
not violate some rule of positive law or property or settled
principle of public policy. (*Black* v. *Jones, supra; Mor-
rison* v. *Tyler, supra.*) And where, as in this case, the
bequest vests and then lapses by reason of a subsequent
forfeiture, and the residuary legatee is also a donee of
gifts charged with a condition, we think the correct rule
is, as stated in 40 Cyc. 1726, that a "forfeiture takes place
only as to the gift to which the condition is attached, and
its benefits go to the heirs, and not to the residuary lega-
tees, where the residuary legatees are also donees charged
with a condition." Such is substantially the situation. pre-
sented here. Applying this rule to the facts and circum-
stances of this case and the intention of the testator as
ascertained from a consideration of the whole will, we
think that it was not the intent of the testator that such

legacies as lapsed by reason of forfeiture should become a part of the residuary estate, but that, upon a forfeiture being declared, under clause 34 of the will such lapsed legacies go to the heir-at-law of the testator as intestate property and not to the residuary legatees, and that appellant, as sole heir of the testator, has a right to maintain this bill to declare a forfeiture.

It is next insisted that the bill is defective because it does not allege that a reasonable time has elapsed in which to carry out the purposes for which the bequests in question were made, and because it further affirmatively appears from the bill that the Old People's Home of Chicago is devoting the funds received by it to the purposes for which it was organized, in providing a home for indigent old ladies. With these contentions we do not agree. The bill shows, by specific allegations, that more than twenty-one years have elapsed since the Old People's home received the funds bequeathed to it and that no part of the same has ever been devoted to the purposes for which the bequests were made, but, on the contrary, that the funds so given have been invested and re-invested for the purpose of accumulating a fund, but for what purpose the same is to be accumulated and used is not shown by the bill. What is a reasonable time is a question of law and fact, to be determined from a consideration of all the facts and circumstances of each particular case, and where the time that has elapsed is given, the allegation of the pleader that such time was a reasonable time would add nothing to the other facts well pleaded. Facts—not the conclusion of the pleader—should be pleaded. It was the plain duty of the trustees of the Old People's Home to devote the funds received by reason of these bequests to the purposes for which they were given. If the trustees could wait twenty years to build a home for old men of American birth they could wait a hundred years. It may well be that if the fund were allowed to accumulate indefinitely

through investments it would in the future take care of more old men, but the fact cannot be overlooked that in the regular order of things many old men who were eligible to benefit from the gifts in question if appellees had used such gifts as directed by the testator have passed from the need of homes on this earth. We think the bill was sufficient in this respect.

As to the last contention, while it is true that the bill alleges that the Old People's Home is devoting its funds to the promotion of the purposes for which it was organized, to the extent that it is providing a home for indigent old ladies, it further appears from the bill that this fund has not been invested in the construction of a building for a home for old men of American birth, only, and providing a fund for maintaining the same, as provided in the third and thirty-second clauses of the will. There is a marked distinction in the character of the two gifts made in these clauses. The gift in clause 3 is given in trust, to manage, invest and control the same and the same from time to time re-invest, and the income thereof to use and expend in defraying the current expenses of the home for old men to be erected as thereinafter provided, while as to the gift made in clause 32 there is no authority to invest or re-invest the same for the purpose of accumulating a fund for any purpose, but, on the contrary, the gift is made with specific directions to use and expend the same in the erection of a suitable building to be used, managed and controlled by the board of trustees as a home for old men of American birth, only, separate and apart from the Old People's Home. The purpose of these gifts is so clearly and aptly set forth as to leave no question as to the intention of the testator in respect to each bequest and the powers and duties of the donees in respect thereto. By the one clause he provides for the construction of a building for the use of old men of American birth, only, and by the other clause he provides a permanent fund for its

maintenance; and there is no more authority for investing and re-investing the building fund for the purpose of accumulating a fund than there is for the investing of the $10,000 endowment fund in the construction of a building. The funds are not convertible funds and should not have been so treated.

That a forfeiture might be declared either from a failure of the corporation or institution which received a gift to carry out the purposes for which it was organized or to devote the funds to the purpose for which the gifts were made is clear from the language of clause 34, which provides that if any of the institutions or corporations which receive any portion of the testator's estate shall "at any time fail or cease to carry out effectively the objects and purposes for which they were, respectively, organized, and to promote which the bequests to them, respectively, are by me herein made and given," then the bequests to them shall become void. It is admitted by the demurrer that such home has not been built, as charged in the bill, and that the fund given for this purpose and the fund for maintaining the home have not been devoted to those purposes, but, on the contrary, have been invested and re-invested, without any attempt on the part of the trustees of such institution to devote the same to the purposes for which they were given. This, we think, was a clear violation of both the letter and spirit of the gifts of such a character as to render them subject to forfeiture under clause 34 of the will, and as the residuary legatees do not take, appellant, as the sole heir of the testator, has a right to declare and enforce such forfeiture. It was evidently the hope and expectation of the testator that no forfeiture should ever be declared, and for that reason he gave no more specific directions as to what disposition should be made of the fund in case of such eventuality. The estate having vested, and there being no valid disposition of it in case of such forfeiture, it must be held to be intestate

property, and as such to descend to appellant as the heir-at-law of the testator. As the reversionary interest is vested in her, she, alone, has the right not only to declare a forfeiture but also to maintain her bill for the purpose of enforcing such declaration. This she has done, and upon the admitted facts in the record before us she is entitled to an accounting for that fund.

For the reasons given, the decree is reversed and the cause remanded, with directions to overrule the demurrer and for further proceedings in accordance with the views herein expressed.

*Reversed and remanded, with directions.*