CHARLES E. MORRISON *vs.* CARRIE M. TYLER *et al.*—(CARRIE M. TYLER, Appellant, *vs.* CHARLES H. NICHOLS *et al.* Appellees.)

*Opinion filed December 16, 1914—Rehearing denied Feb. 4, 1915.*

1. WILLS—*effect must be given to all the words if it can be done.* Effect must be given to all the words of a will if it can be done, and the intention of the testator must be gathered from the language used in the whole instrument.

2. SAME—*court may look to circumstances surrounding testator and beneficiaries.* In construing doubtful provisions of a will, courts may look to the circumstances surrounding the testator and the beneficiaries named in the will at the time the will was made.

3. SAME—*different parts of will should be harmonized, if possible.* Courts are bound to harmonize the different parts of a will if it can be done, and to give all of its provisions effect if they are consistent with the rules of law.

4. SAME—*clause of a will construed as contemplating contingency of daughter dying before the testator.* A clause in a will providing that if the testator's daughter "shall die leaving a child or children her surviving who are alive and in being at the time of my death," contemplates the contingency of the daughter's death occurring before that of the testator, and if such contingency does not happen, the provision for distribution depending thereon is

nullified by a former provision for distribution depending upon another contingency which does happen.

5. SAME—*construction which will disinherit lineal descendant is not favored.* A construction of a will which will have the effect of disinheriting a lineal descendant and heir-at-law of the testator is not favored.

APPEAL from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

STEAD, LINCOLN & FITCH, for appellant.

ROBERT VANSANDS, (CHARLES S. CUTTING, of counsel,) for appellee Charles H. Nichols.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This is an appeal from a decree of the superior court of Cook county construing the last will and testament of Ezekiel Morrison, deceased. The appellee Charles E. Morrison, complainant in the court below, filed his bill, individually and as trustee under the last will and testament of Ezekiel Morrison, asking that the court below construe the said will, and made parties defendant, among others, Carrie M. Tyler and Charles H. Nichols, a minor. The bill sets out the will at length, and the further facts therein set out sufficiently appear from a written stipulation as to the facts. The construction of the will was sought as to section 3 thereof, which disposes of that portion of the testator's property known as the Clark street property.

The will of Ezekiel Morrison consists of six sections and three codicils. In section 1 provision is made for the testator's wife, Sarah A. Morrison, in case she survived him. As she did not survive him it is not necessary to consider this section. In section 2 he made certain provisions for his son Lorenzo Morrison, and for the wife of his said son, Susan Morrison. This section was annulled by the first codicil to the will, which will be referred to later, and this section may be disregarded. Section 3 is

as follows, with the exception of the words "clause 1," "clause 2," etc., enclosed in brackets, which are our own, and are merely inserted to mark the different provisions of the entire section so they may be referred to and better understood:

"Section 3. I give, devise and bequeath to such of my executors hereinafter named as shall undertake the execution of this my will, and in case at any time after my death neither of my said executors shall be acting as such in the execution of this my will then to the person or persons who shall from time to time be charged with and legally acting in the execution of this my will, the following real estate, with the improvements thereon, to me belonging, to-wit: The south twenty-one (21) feet and six (6) inches of lot five (5), being twenty-one feet and six inches on Clark street and eighty (80) feet, more or less, on Madison street; and also the north one hundred feet (100 feet) of lot five (5) and the north one hundred (100) feet of the west forty (40) feet of lot six (6), all in block fifty-seven (57), in the original town of Chicago, in the county of Cook and State of Illinois, the same being more shortly referred to hereinafter as my Clark street property, to be held by such person or persons upon the trusts and uses following, viz.: To rent the same, or any part thereof, and collect the rents, issues and profits of the same; to pay the taxes and assessments on the same from such rents; to keep the buildings from time to time on the same insured and pay the premiums for such insurance from the rents of the same; to keep the buildings from time to time on the same in good repair; to alter such buildings and to replace such buildings in case such buildings are destroyed or injured by fire or otherwise; and in case such buildings are destroyed or damaged to the extent of more than fifty per cent of their value by fire, to mortgage my said Clark street property for the purpose of replacing said buildings or erecting other buildings in their stead, but such

mortgage, if made, shall be subject and subsequent to the charges on my said Clark street property in this my will imposed upon it, and also if such mortgage is made the net income from my said Clark street property, after the payment of said charges and the taxes, insurance and necessary expenses of taking care of my said Clark street property, shall be applied to the payment of said mortgage till the same is fully paid, to the exclusion of all other claims on said income under this my will; and I direct that the person or persons having control, as aforesaid, of my said Clark street property shall out of the rents of the same pay to my said wife, Sarah A. Morrison, the annuity of $5000, as hereinbefore provided, and I make said annuity of $5000 a charge upon my said Clark street property so long as said annuity shall by the terms of this my will be payable, and no longer. I further direct that the person or persons having control, as aforesaid, of my said Clark street property shall out of the rents of the same provide the homestead for my said son Lorenzo in case it shall be the duty of such person or persons, under the terms hereof, to provide the same, and pay my said son Lorenzo the annuity of $2500, as hereinbefore provided, and pay the wife of my said son Lorenzo, viz., Susan Morrison, the annuity of $1000, as hereinbefore provided, in case, under the terms of this my will, she becomes entitled to such annuity, and I make the providing of said homestead and said annuity of $2500 and said annuity of $1000 a charge upon my said Clark street property till the objects of this my will in those regards are fully accomplished. But in case said Susan Morrison becomes entitled, under the terms hereof, to said annuity, she may, if she sees fit, release my said Clark street property from the charge of said annuity of $1000 on it, and her deed to that effect shall release said Clark street property from said charge of said annuity of $1000. It is my will, and I direct, that my son Charles E. Morrison shall have the exclusive management and con-

·trol· and the right to rent and collect· the rents, issues and profits of my said Clark street property, and such management and control and the right to· rent and collect rents is hereby given to him for and during the entire time he shall ·live after my death, and he shall be paid and have the right to retain, and I hereby give him, from the rents, issues and profits of my said Clark street property, the sum of $2500 a year (over and above his fees as my executor)· as a salary for his services in that regard for all the time · he shall perform or be willing to· perform such services, and I make said last named sum of $2500 yearly to· my said son Charles E. a charge on my said Clark street property so long as the same shall, under the terms of this my will, ·be payable, and my said son Charles E. may retain said salary in ·monthly installments if he sees fit. The net income from my said Clark street property over and above the sums in this my will charged upon it and directed to ·be paid from its rents, issues and profits shall be equally ·divided, half and half, alike between my said son Charles E. Morrison and my daughter, Abbie Nichols, so long as they both shall live after my death, such division to be made quarter yearly or at such other times as they may agree among themselves. And the survivor of my said son Charles E. and· my said daughter, Abbie, shall be en-·titled to such survivor's half of said income from my said Clark street property so long as such survivor shall live.

· "[Clause I.] In case my· said daughter, Abbie, dies, either before or after my death, leaving a child or children her surviving and· also leaving my said son Charles E. her ·surviving, then I direct that my said son Charles E. shall ·keep, and from time to· time invest, the share of the income .of my said Clark street property which my. said daughter, .Abbie, would be entitled to under this my will if she .was alive, for such child or children of my said daughter, ·Abbie, (and I give such share of such income to them,) ·until the youngest of such children attains majority. But

my said son Charles E. may expend, from time to time, such portions of such share as he shall deem prudent in and about the maintenance and education of such child or children of my said daughter, Abbie, and upon the youngest of said child or children of my said daughter, Abbie, attaining majority,. if my said son Charles E. is then alive and my said daughter, Abbie, is then dead, then, subject to the charges aforesaid, I give, devise and bequeath one-half of my said Clark street property to my said son Charles E. Morrison and the other half of my said Clark street prop-. erty to the children and the descendants of the children (if any) of my said daughter, Abbie, the descendants of a child of my said daughter, Abbie, to take such portion of the same as their parents would have taken if alive.

"[Clause 2.] If my said son Charles E. dies before the death of my said daughter, Abbie, leaving a child or children him surviving, then I give and bequeath the share of the income of my said Clark street property which my said son Charles E. would be entitled to under this my will if he was alive, to his child or children, share and share alike,· until the youngest of his said children shall attain majority, and, in the case last supposed, upon the youngest of the children of my said son Charles E. attaining majority, I give, devise and bequeath, subject to the charges aforesaid, one-half of my said Clark street property to the child or children and descendants of a child or children of my said son Charles E., the descendants of a child or children taking the share their parents would have taken if alive, and the other half of my said Clark street property I give, devise and bequeath, subject to the charges aforesaid, to my said daughter, Abbie, if she be then alive, or if she be then dead, to her surviving child or children and the descendants of a child or children, the descendants of a child or children taking the share which their parents would have taken if alive, and if my said daughter, Abbie, be then dead and have no descendants then living, then I give, devise and be-

queath, subject to the charges aforesaid, the whole of my said Clark street property to the child or children and descendants of a child or children of my said son Charles E., the descendants of a child or children taking the share which their parents would have taken if alive.

"[Clause 3.] If either my said son Charles E. or my daughter, Abbie, shall die leaving no child or children nor descendants of a child or children surviving him or her, the portion of the income of my said Clark street property to which such decedent would be entitled under the terms of this my will if living shall be paid to the survivor of the two.

"[Clause 4.] If my said daughter, Abbie, should die before my said son Charles E. and leave no child or descendants of a child or children her surviving, then, subject to the charges aforesaid, I give, devise and bequeath my said Clark street property to my said son Charles E. and to his heirs forever.

"[Clause 5.] If my said daughter, Abbie, shall die leaving a child or children or the descendants of a child or children her surviving who are alive and in being at the time of my death, then, upon the youngest of such descendants or children attaining majority, I give, devise and bequeath, subject to the charges aforesaid, one-half of my said Clark street property to such children and descendants of my said daughter, Abbie, her living children to take equally and the descendants of a child or children to take the share their parents would have taken if alive; and the other half of my said Clark street property I give, devise and bequeath, subject to the charges aforesaid, to my said son Charles E. if he be then living, and if he be dead, then to his child or children and descendants of a child or children, the descendants of a child or children to take the share which their parents would have taken if alive, and if my said son Charles E. be then dead and have no descendants living, then in that event, and subject to the

charges aforesaid, I give all my said Clark street prop-
erty to the descendants of my said daughter, Abbie, to be
shared by them as above provided in case of the one-half
of the same coming to them.

"[Clause 6.]    In case none of the contingencies above
in this section provided for with reference to the final dis-
position of the fee of my said Clark street property shall
happen, then upon the death of the survivor of my said
son Charles E. and my said daughter, Abbie, subject to the
charges aforesaid, I give, devise and bequeath one-half of
my said Clark street property to the heirs-at-law, under the
then existing statutes of the State of Illinois, of my said
son Charles E., and, subject to the charges aforesaid, the
other half of my said Clark street property to such heirs-
at-law of my said daughter, Abbie, to them and their heirs
forever."

By section 4 the testator devised a large amount of his
real estate by description, and all the rest and residue of
his real estate to his son Charles E. Morrison and to his
daughter, Abbie. By section 5 the testator bequeathed all
his personal property to said Charles E. Morrison and his
said daughter, Abbie. By section 6 he appointed Charles
E. Morrison and Abbie Nichols the executors of his will.

There are three codicils to the will. By the first codi-
cil, dated October 26, 1882, the testator provided that as
Susan Morrison, wife of Lorenzo Morrison, had died since
the execution of his said will he revoked all of section 2
of said will, and directed that out of the proceeds of the
income of his estate there should be paid to his son Lorenzo
$100 a month as long as he lived. Lorenzo died before
the bill was filed. By a second codicil, dated November 3,
1888, the testator provided that the persons acting in exe-
cution of his will should have the power to make a ground
lease for said Clark street property for ninety-nine years.
By the third codicil, dated December 22, 1894, he revoked
the appointment of Abbie Nichols, his daughter, as execu-

trix, as provided in section 6 of the original will, and appointed his son Charles E. Morrison sole executor of his last will and testament and the codicils thereto.

The defendant Carrie M. Tyler answered the bill and Charles H. Nichols answered by his guardian *ad litem.* On the hearing the chancellor found and decreed that the true meaning and construction of the said will is, that upon the death of Abbie Nichols, the complainant, Charles E. Morrison, became and is the owner, in fee simple, of an undivided one-half of the real estate in controversy and is entitled to the income therefrom, together with the exclusive management and control of the entire property, including the right to rent the same and collect the rents, issues and profits therefrom during his lifetime, and to retain from such rents a salary of $2500 per annum for such services. There is no controversy as to this finding of the chancellor or to the decree in this regard. The chancellor further found and decreed that defendants Carrie M. Tyler and Charles H. Nichols each became and is the owner, in fee simple, of an undivided one-fourth of said real estate and is entitled to the income therefrom, subject to the right of Charles E. Morrison to manage and control said real estate and to rent and collect the rents therefrom, each of the said interests being subject also to the proportionate share of the salary of Charles E. Morrison.

There is no controversy about the facts, which are as follows: Ezekiel Morrison, of Cook county, Illinois, died in 1895, leaving a last will and testament. He left him surviving at his death, his sons, Lorenzo Morrison and Charles E. Morrison, and his daughter, Mrs. Abbie Nichols. Sarah A. Morrison, the wife of Ezekiel Morrison, died prior to his death, and Lorenzo Morrison died after the death of his father, leaving no descendants him surviving. Charles E. Morrison is still living and has had no children. He undertook the trusteeship under the will and has acted as such trustee since the death of Ezekiel Morri-

son.  Abbie Nichols, the daughter, was married twice.  By
her first husband she had one daughter, the appellant, Car-
rie M. Tyler, and by her second husband she had one son,
Charles M. Nichols, who died on or about December 20,
1911, leaving one son, Charles H. Nichols, one of the ap-
pellees, a minor of about the age of thirteen years.  Abbie
Nichols died November 29, 1912, leaving as her next of
kin and only heirs-at-law the said Carrie M. Tyler, her
daughter, and said Charles H. Nichols, her grandson.  At
the date of the execution of the will of Ezekiel Morrison,
in 1881, Carrie M. Tyler and Charles M. Nichols were liv-
ing, aged, respectively, twelve years and eight years, and
at the death of Ezekiel Morrison, in 1895, they also were
both living.  Charles H. Nichols, son of Charles M. Nich-
ols, was not living and in being at the death of said Eze-
kiel Morrison.

The provisions of the first part of section 3 making
certain bequests to Sarah A. Morrison, Lorenzo Morrison
and Susan Morrison, his wife, a charge on said property
may be disregarded, said Sarah A. Morrison having pre-
deceased the testator and Lorenzo Morrison and his wife
having died before the bill in this cause was filed, and
there being no contest over the right of Charles E. Morri-
son to manage the property and collect the rents and issues
therefrom and withhold from such rents and profits the
sum of $2500, annually, for himself during his life.  The
question narrows down to that portion of section 3 which
we have set out under clauses 1 to 6.  By these different
clauses the testator evidently undertook to provide for the
disposition of the Clark street property in different ways,
according to different contingencies which he anticipated
might happen and which he undertook to provide for.
From the foregoing statement of facts it will be seen that
the contingencies provided for by that portion of section 3
which we have denominated clause 2 did not happen, and
the same is true of those portions of section 3 which we

have separated as above for the purpose of analyzing said section and coming under clauses 3, 4 and 6. The questions then involved in this litigation are to be determined principally from the construction of clauses 1 and 5. It is necessary, however, to consider the other clauses of section 3 and other portions of the will that throw any light on the portions of the will in question.

This appeal is prosecuted by Carrie M. Tyler. It is her contention that clause 5 governs to the exclusion of the rest of the said section, and that its meaning is, that only those children and descendants of Abbie Nichols who were alive and in being at the time of the death of the testator can take, and that such is the clear intention of the testator; that, consequently, on the death of her mother, Abbie Nichols, (she being the only person within the class of child or descendant of a child or children of Abbie Nichols who was alive and in being at the time of the testator's death,) she became entitled to one-half the fee in the Clark street property, subject to the right of control of Charles E. Morrison of the entire property and to his salary, and that Charles H. Nichols has no interest therein. On behalf of appellee Charles H. Nichols it is contended that under a proper construction of the entire section 3, and particularly of that part set out in clause 1 which provides for the only contingency that actually did happen, the fee of the property is now vested as the superior court found in construing the will,—one-half in Charles E. Morrison, one-fourth in Carrie M. Tyler and one-fourth in Charles H. Nichols.

In construing wills and testaments certain rules have been adopted and followed by all courts, which are well stated by Mr. Chief Justice Marshall in *Smith* v. *Bell,* 6 Pet. 68, (8 L. C. P. ed. 322): "The first and great rule in the exposition of wills, to which all other rules must bend, is, that the intention of the testator expressed in his will shall prevail, provided it be consistent with the rules

of law. (Doug. 322; I Black. Rep. 672.) This principle is generally asserted in the construction of every testamentary disposition. It is emphatically the will of the person who makes it, and is defined to be 'the legal declaration of a man's intentions which he wills to be performed after his death.' (2 Blackstone's Com. 499.) These intentions are to be collected from his words and ought to be carried into effect if they be consistent with law. In the construction of ambiguous expressions the situation of the parties may very properly be taken into view. The ties which connect the testator with his legatees, the affection subsisting between them, the motives which may reasonably be supposed to operate with him and to influence him in the disposition of his property, are all entitled to consideration in expounding doubtful words and ascertaining the meaning in which the testator used them." In *Howe* v. *Hodge*, 152 Ill. 252, the court said: "The polar star in the interpretation of a will is the intention of the testator. This intention is to be gathered from the words and expressions used in the will itself. The different provisions and parts of the instrument are to be compared with and read in the light of each other, so as, if possible, to deduce therefrom an *harmonious whole.* The general intent of the will is to be carried into effect at the expense of any particular intent, provided such general intent is consistent with the rules of law, for when there are conflicting intents that which is the most important must prevail." In this connection there is another rule that has been universally adopted and followed by the courts, which is, that effect must be given to all the words of a will if it can be done, and that the intention of the testator must be gathered from the language used in the entire will. *Black* v. *Jones*, 264 Ill. 548, and cases cited.

Approaching the consideration of the will in question with the foregoing rules in mind, it first appears from section 3 of the will that it was the clear intent of the testator

to devise the Clark street property to Charles E. Morrison and Abbie Nichols and to their children or descendants generally. Unless we adopt the construction of clause 5 as contended for by counsel for appellant, and aside from the control of the property by Charles E. Morrison and his salary for managing same, there is nowhere in section 3, or in the entire will, any intent to make any difference in the disposition of the property between Charles E. Morrison and Abbie Nichols or their descendants. Nor is there shown, aside from clause 5, any intent or disposition to make any discrimination in any way between any of the children or descendants of Abbie Nichols. In the first, second and sixth clauses of the will the testator provided for the ultimate disposition of the Clark street property in the event of certain contingencies, any one of which was apt to happen when he executed the will, just as much so as the contingency mentioned in clause 5. In all of these clauses he provides that the property shall go to the children and the descendants of the children of his said daughter, Abbie, and there is no discrimination made between any such children or descendants. For that reason, in the absence of any other explanation, it is difficult to conceive how the testator could have intended that clause 5 should have the effect contended for by counsel for the appellant, as the intent of the testator is gathered, according to the rules, from the language of the whole will. Had the testator intended to disinherit any of the children or descendants of Abbie Nichols he could have done so in plain words, and there can be no doubt that he had the ability so to do. From other evidence in the record we infer that the gross income from the estate is upwards of $60,000 a year. One of his three children was his son Lorenzo, and the testator left him but $100 a month, to be paid him during his life, and the use of a homestead worth not to exceed $5000, so there can be no doubt that had the testator any intention whatever of disinheriting any of the

children or descendants of Abbie Nichols he would have said so in plain words, about which there would have been no question. It is proper to look to the situation and circumstances surrounding the testator and the beneficiaries named in the will at the time the same was drawn and executed. The daughter, Abbie Nichols, at that time was married and had two children, Carrie M. and Charles M. Charles M. died about eleven months before his mother died, and had he survived her this suit would be totally unnecessary, as there would then be no question about the effect and construction of clause 5. Also, in that event, clause 5 and clause 1 would be in entire harmony. We are bound to harmonize the different parts of this will, if possible, and to give all its provisions effect if we can do so consistently with the rules of law.

The contingency that actually happened is that set out in that part of section 3 of the will which we have placed under clause 1. This portion made a disposition of the Clark street property "in case my said daughter, Abbie, dies, either before or after my death, leaving a child or children her surviving and also leaving my said son Charles E. her surviving." She did die after the death of the testator, she did leave a child and also a grandchild her surviving, and the son of the testator, Charles E., also survived her. There is no question but that under said clause 1, if that clause is to be given effect, the fee in the Clark street property would ultimately vest as found by the superior court,—one-half in Charles E. Morrison, one-fourth in Carrie M. Tyler and one-fourth in Charles H. Nichols. It remains to consider whether clause 5 should be construed in the manner contended for by counsel for appellant, to the exclusion of the rest of the entire section 3.

It is insisted by counsel for appellant that by clause 5 the testator meant and intended that in the event of the death of his daughter, Abbie, either before or after the testator's death, leaving children, one-half of the Clark

266 – 21

street property would go to only such of her children, or descendants of child or children her surviving, as were living and in being at the time of the testator's death. It is impossible to give this clause such a construction unless we ignore or render void the provisions of clause 1. Aside from any other part of the will, taking clause 5 by itself, what does it mean? The first part of the clause contains the language relied on by counsel for appellant, as follows: "If my said daughter, Abbie, shall die leaving a child or children or the descendants of a child or children her surviving who are alive and in being at the time of my death," etc. Counsel for appellant have cited a number of authorities on the proposition that clause 5 was not intended to apply only in the event that Abbie died before the testator, but was intended to govern the disposition of the property upon her death at any time under the conditions stated in that clause. We do not regard these authorities in point, as they are all subject to the rule that the intent of the testator as expressed in the will must govern, and a careful reading of clause 5 shows that it is not the intent to provide for any other contingency than that of the daughter, Abbie, dying before the testator. The only way in which the contingency mentioned in that clause could happen,— that Abbie Nichols would die leaving a child or children or the descendants of a child or children her surviving who were alive and in being at the time of the testator's death,— would be that Abbie Nichols' death would precede the death of the testator. Counsel for appellant insist on restricting the class they contend takes under this clause to those of the children or descendants of Abbie Nichols who are alive and in being at the time of the testator's death. But they must also, under this clause, be children or descendants of children of Abbie Nichols who shall be surviving her if she shall die. Manifestly, the only manner in which such a class could come into being as would be entitled to take under this clause would be that Abbie Nich-

ols would die leaving children or descendants of children and that after her death the testator would die. Then such of the children or descendants of children of Abbie Nichols as were living at that time, and who were also the survivors of Abbie Nichols by reason of her previous death, would answer the description of such class. But such a class of children or descendants who were both survivors of Abbie Nichols and living at the time of Ezekiel Morrison's death never existed. Unless she died before the testator she could not leave children or descendants of children who would answer to the class that appellant contends were the only ones who could take under clause 5, viz., children and descendants of children who survived her and who were alive and in being at the time of the testator's death. If our construction of this language of clause 5 is correct, then that clause may be disregarded in the same manner as clauses 2, 3, 4 and 6, as providing for a disposition of the property in case of a contingency that did not occur,—that is, the death of Abbie Nichols before the death of the testator,— and to a class of persons that never existed or fulfilled the description of those who could take. If the construction contended for by appellant is adopted, the lineal descendant and heir-at-law of the testator would be disinherited. Such construction is not favored where the will is susceptible of another construction that will not disinherit the natural heir. 30 Am. & Eng. Ency. of Law, 668, 669; 40 Cyc. 1412; *Straw* v. *Barnes,* 250 Ill. 481; *Olcott* v. *Tope,* 213 id. 124.

We have carefully considered the able and exhaustive brief of counsel for appellant in this case, but after a careful consideration of the entire will and all the facts and circumstances surrounding the execution thereof we are convinced that the construction given the will by the court below was the only reasonable and correct construction that could have been given, and the decree of the superior court will be affirmed.                    *Decree affirmed.*