LYDIA E. DEFREES *et al.* Appellants, *vs.* ROBERT T. BRY-
DON, Appellee.

*Opinion filed October 24, 1916—Rehearing denied Dec. 19, 1916.*

1. WILLS—*testator's intention to be ascertained from language
of entire will.* In construing wills the constant effort of the courts
is to ascertain and give effect to the intention of the testator as
expressed by the language of the whole will and to give effect to
the same in so far as is consistent with the established rules of law
and the public policy of the State.

2. SAME—*original will and codicils to be construed together.*
Where the testamentary instrument consists of an original will
and one or more codicils all are to be construed together as one
instrument, and in case of doubt, where some of the provisions of
a will or codicil have been revoked by a later one, resort may be
had to the revoked provisions as an aid in gathering the intention
of the testator as expressed by his later acts.

3. SAME—*executory devises are applicable to testamentary dis-
positions of personalty.* Executory devises are applicable to testa-
mentary dispositions of personal property as well as real estate,
but in the case of personal property the limitation is more prop-
erly termed an executory bequest.

4. SAME—*when a will must be construed to pass real and per-
sonal property together.* Whenever a will purports to dispose of
real estate and personal property in the same words and in the
same connection, and it is manifest that the testator intended both
to go together, the will must be so construed.

5. SAME—*when presumption that testator used words at dif-
ferent times in the same sense cannot prevail.* Where the same or
similar words are used in different parts of the same will the pre-
sumption is that the testator used them in the same sense in each
instance, but this presumption cannot prevail where the words in
one part are used in connection with other words not used in the
other part and which explain, change or modify their legal effect.

6. SAME—*trustees under a will take only the quantity of-inter-
est required by the purpose of the trust.* Where a trust is created
by will and a devise is made to trustees for the purpose of enabling
them to execute the terms of the trust, the trustees will take only
that quantity of interest which the purpose of the trust requires.

7. SAME—*gift of income of a trust estate indicates intention of
testator that the fee shall vest at his death.* An absolute gift of
all the income of a trust estate to the testator's children indicates

an intention on his part that the fee in the trust property shall vest in the children at once upon his death.

8. SAME—*in construing wills all language is to be given effect, if possible.* In construing wills that construction is to be favored which will render no word, phrase, clause or sentence superfluous or meaningless.

9. SAME—*testator may limit a fee upon a fee by way of an executory devise.* A testator may limit a fee upon a fee, by way of an executory devise, in such a way that upon the happening of some contingency the estate first granted shall be cut down to a base or determinable fee.

10. SAME—*provision forbidding termination of trust to enable children to speculate does not imply a power to dispose of the fee.* Where a testator devises his property in trust for his children, "or her or his heirs forever," the fact that the will provides that the trust shall not in any case be terminated to enable the children to invest their money in speculation does not necessarily imply that they shall have power, when the trust is terminated, to dispose of the property in fee.

11. SAME—*provision giving children power to dispose of their shares by will does not defeat a remainder over created by executory devise.* Where a testator devises his property in trust for his children, "or her or his heirs forever," a provision giving them power to dispose of their respective shares by will to persons of the blood of the testator or his wife does not operate to defeat an executory devise over in case of their death without issue, as such power is a limited and not an absolute right of disposition.

12. SAME—*what power of disposition is required to defeat a base fee created by executory devise.* A power of disposition, in order to defeat a base or determinable fee created by way of an executory devise, must be absolute and unlimited, and such that it may be exercised during the lifetime of the devisee as well as by will at his or her death.

13. SAME—*when first estate of children is a base fee.* Where property is devised to trustees for the benefit of the testator's five named children, who are to have the income annually in equal shares, and, when the trust estate is divided, each to have one-fifth part of the principal, a provision that if any of said children shall die before the testator, "or afterwards," without leaving issue, such deceased child's share shall go to the surviving children and their heirs, equally, cuts down the first estate of the children to a base fee, which will determine upon their death without leaving issue.

14. SAME—*termination of a trust does not give beneficiaries a better title than is given by the will.* The termination of a trust in favor of the testator's children and a division of the estate among the children by an order of court on petition of all the children and the trustees does not invest the children with any better title to the property than that given them by the will, and such proceedings do not bar the surviving children from afterwards asserting a right to the fee given them by way of executory devise, conditioned on the death of any child leaving no issue.

15. LACHES—*when parties are not guilty of laches in asserting rights under an executory devise.* Parties who claim under an executory devise have no rights which can be enforced prior to the happening of the specified contingency, and they are not guilty of *laches* if they commence their action within a reasonable time after their rights accrue.

APPEAL from the First Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding.

February 18, 1869, John H. Bradley, then a resident of the city of Indianapolis, Marion county, Indiana, made and executed his last will and testament in accordance with the laws of that State then in force. At the time of executing the same his family consisted of himself and five children, viz.: Mary, who married John B. Kitchen; Frances, who married one Ross and subsequently James B. Hill; Catherine S., who married Robert T. Brydon; Lydia E., who married Morris M. Defrees; and a son, Emmor Bradley. Catherine S. Brydon departed this life intestate in Chicago, Cook county, Illinois, on May 15, 1910, leaving her surviving Robert T. Brydon, her husband, but no child or children or descendant of a deceased child or children. She was also survived by her three sisters, Lydia E. Defrees, Frances B. Hill and Mary Bradley Kitchen, the brother, Emmor, having departed this life some years before, leaving no issue. Frances B. Hill died August 6, 1910, and Mary Bradley Kitchen died January 10, 1911. John F. De-

vine is administrator of the estate of Frances B. Hill and John B. Kitchen is administrator of the estate of Mary Bradley Kitchen.

On August 23, 1910, appellant Lydia E. Defrees filed her bill in chancery in the circuit court of Cook county against Robert T. Brydon, both individually and as administrator of the estate of Catherine S. Brydon, for the purpose of procuring a construction of the last will and testament of John H. Bradley, and for an accounting by that estate of the portion of the trust estate of John H. Bradley received by her sister by virtue of an order of the court of common pleas of Marion county, Indiana, entered in the matter of the estate of John H. Bradley, by which she received $18,150 as her one-fifth part of such estate. John F. Devine and John B. Kitchen, as administrators of their respective estates, were also made parties defendant to the bill. All the defendants answered the original bill, and the defendants John F. Devine and John B. Kitchen, as administrators of their respective estates, filed cross-bills, asking substantially the same relief as that sought by complainant in the original bill. Answers were filed to the cross-bills and replications to the respective answers, and the cause was referred to a master to take the proofs and report the same, with his conclusions as to the law and facts. The master found the complainants were not entitled to the relief prayed, and recommended that the original bill and the cross-bills be dismissed for want of equity. Exceptions were taken to the master's findings and report, and on the hearing the court sustained the exceptions to the master's report and entered a decree in complainants' favor, finding they were entitled to the relief prayed in their respective bills. From that decree Robert T. Brydon, both individually and as administrator of the estate of his deceased wife, perfected appeals to the Appellate Court for the First District. The appeals were consolidated in that court. A hearing was had and the decree of the circuit court was reversed

and the cause remanded to the circuit court, with directions to dismiss the original bill and the cross-bills for want of equity. A certificate of importance was granted by the Appellate Court, and this appeal has been prosecuted to this court.

There is no dispute as to the facts in the case. The sole question is the proper construction of the last will and testament, and the codicils thereto, of John H. Bradley, and the legal effect of the proceedings had by the heirs of his estate and the trustees created by such will and codicils in the court of common pleas of Marion county, Indiana, by which the trust was terminated and the trust estate divided among the heirs.

The will and codicils consist of a number of clauses or items, but few of which have any material bearing on the question at issue. By the first five items of his will the testator made gifts of specific sums of money to each of his children, and in case of their death leaving issue, to his grandchildren. He further provided that if at the time of his death he should have a house occupied by himself and a child or children, if his unmarried daughters, or either of them, desired to remain in it and use it as a home they might do so without paying rent, by keeping up the repairs, insurance and taxes on the same, and that if either daughter married she should not have the right to so occupy it with her husband as to exclude the unmarried child from its use, and the husband of either of the daughters marrying should have no control or use of the homestead property against the will or to the prejudice of the unmarried daughter desiring to live in it. By the sixth item he gave, devised and bequeathed all the rest and residue of his estate to his five children (naming them) in equal parts, to have and to hold to them and their heirs forever, the shares of Emmor, Catherine and Lydia being subject to the terms of a trust therein created by the seventh item of the will. It further provided that if any child should die before the testator

without leaving a child or children, then such child's share should be equally divided among the surviving children, the children of such deceased child or children to take their parent's share, and in case any such issue should die childless, then and in that case the property derived from him should go to and belong to his other children or to their heirs. By the seventh item he devised his property to William N. Jackson, John B. Kitchen and Frederick A. Ross as trustees, and directed that the trust in each case should be terminated and the share of each in the trust fund and its increase be paid over to the *cestui que trust* as soon as and whenever it would be proper and for the benefit of such estate to do so, vesting the trustees, or a majority of them, with the same power and discretion of parents to decide that matter, and in case his daughters should marry, that none of the trust should pass to or be paid to their husbands or in any way controlled by them, except by the consent of the trustees.

On April 22, 1870, the testator made and executed, in accordance with the laws of the State of Indiana, a certain codicil to his will, consisting of twelve items or clauses. The one material to be considered here, and over the construction of which this controversy arises, is the tenth item, which is as follows:

"*Tenth*—I change 'Item Sixth' of my said will, and instead thereof I give, bequeath and devise all the rest and residue of my estate, real and personal, of every kind and description whatever, consisting of lands, houses, bonds, mortgages, notes, stocks, money, claims, debts due me and rights of any kind, not specifically given, devised or bequeathed by me to my child or children, to William N. Jackson and Francis M. Churchman as joint trustees, in trust for the sole use, ownership, benefit and behoof of my five children, Mary, Emmor, Frances, Catherine and Lydia Ellen, in equal parts, share and share alike, they, my said children, each to have, hold and own the one-fifth part of

the proceeds thereof annually, and when the fund shall be divided by said trustees or their successors, to have the one-fifth part of the principal thereof to her or him or her or his heirs forever, but until such division and the termination of the trust to be subject to the trust hereby made. If any of said children shall die before I do, or afterwards, without leaving issue, such deceased child's share shall go, and is hereby bequeathed, to my surviving children and their heirs, equally. In all cases the child or children of any of my children who may die shall take his or her deceased parent's share, only. If any of my above named children shall die leaving issue and such issue shall die childless, then in that case all property derived from me shall go to my other children and their heirs, such heirs to have only their ancestor's part in any case. Any of my said five children, and every one of them, may, as he or she pleases, by will give and bequeath his or her share of my estate to any other child or lineal descendant of mine or of my deceased wife, giving it only to persons of my or her blood. I hereby appoint my friends William N. Jackson and Francis M. Churchman aforesaid to be joint trustees for each of my said children, and as such to receive and hold in trust all the estate of each of the said children given and bequeathed to them in and by or under this article or clause to this codicil to my will, with full power to manage, invest and put the same to profit for the benefit of my said children, and with similar powers and authority, jointly, as to such trust property, as I have given to trustees of certain donations made by me to three of my said children, in writing, on the first day of .........., 1869, a copy of which writing the said Jackson and my said children each have. And I do hereby will, order and direct that said trust in each case, and as to any one of said children, may be terminated and the share of such child and its increase paid over to such child whenever it will be for the advantage of such child, of which fact the said trustees shall be the sole

judges, and have the power of a parent to decide, and which they may decide, to do so; but I desire that they do not do so except in a very strong, clear case of its propriety, and not in any case to enable such child to invest his or her money in speculation. The estate or interest hereby given to each of my daughters and held by said trustees in trust for them is given and intended to be her sole and separate estate, and shall not pass to or be paid to or be in any way controlled by her husband except by the consent of the said trustees and such daughter, his wife; and this to apply to principal and increase both. I fully authorize said trustees to manage and use the trust funds in each case, in every respect, for the benefit of the *cestui que trust* and where necessary for his or her support and maintenance, and with my executors to sell any real estate and make or cause to be made the proper conveyance thereof to the purchaser, and to so manage, invest, change and re-invest any part of said funds as will be best for the interest of the child or children owning it. Where any real estate shall be sold, the proceeds thereof shall be added to and invested with the trust funds; but they and my executors, before selling any real estate, shall consult and advise with the *cestui que trusts.* Every act of said trustees shall be joint, by or by agreement and order of both. In case of a disagreement a majority of the *cestui que trusts* may decide it."

On June 7, 1871, the testator made and executed, in accordance with the laws of the State of Indiana, a second codicil, making certain changes in his original will and also in the other codicil, none of which, however, have any important bearing on the questions now before us.

On August 12, 1872, John H. Bradley departed this life in the city of Indianapolis, Indiana, leaving him surviving no widow but leaving the five children above named as his only heirs-at-law. On September 2, 1872, his last will and testament, and the two codicils thereto, were duly proven and admitted to probate in the court of common pleas of

Marion county, Indiana. On October 23, 1872, the five children, as beneficiaries under his will and codicils, together with the trustees of the estate created by such instruments, filed a petition in the court of common pleas of Marion county in the matter of the estate of John H. Bradley, deceased, setting forth the devises and bequests made by the last will of the testator in the premises and the clauses granting to the trustees full power and authority in the premises to terminate the trust as to any or all of the said children and their heirs and to make partition of all of the property among them; that it was the desire of all of the heirs and legatees of the testator that such division should be made, and that the trustees had decided that it would be to their advantage and best interests to make such division and partition of all the property of which the testator died seized among the parties in interest, in equal parts, and that the children and heirs of the testator and the trustees had agreed upon a division of the real and personal property among them, setting forth the division of the property to be made, and asking that full credit should be given to the executor for the respective shares of the personal estate in his hands as such executor which he had delivered to them, namely, $18,150 to each of the said heirs. The petition is signed by the trustees and each of the children of the testator, with their respective spouses. Apparently at the time of signing the petition Lydia E. Defrees was a minor, as the following appears on the petition under date of February 25, 1873:

"Since signing the foregoing instrument I have arrived at the full age of twenty-one years, and do now ratify and confirm the division of property made as per said instrument. Done with my consent.
LYDIA ELLEN DEFREES,
MORRIS DEFREES."

It has been stipulated that the statutes and published reports of the courts of the State of Indiana are to be considered as being before the court, and that the court may

determine what the law of Indiana was or is upon any proposition of law which may be material or pertinent to the issues involved in this case without the necessity of pleading and proving such laws, it being the intention of the parties that the court may construe and determine the laws of the State of Indiana, wherever material, by reference to the statutes and decisions of that State, the same as if the court were sitting as one of the courts of such State.

Appellants contend that the estate created by the tenth item of the first codicil is an executory devise in favor of the descendants of the testator in the event of the death of any of his children without issue, and that the proceedings had by the heirs and trustees in the court of common pleas of Marion county, Indiana, making a settlement of the trust and a division of the trust estate among the children, did not change the provisions of the will or divest appellants of their interest in the estate of Catherine S. Brydon, created by such executory devise, in the event that she died leaving no child or children or descendants of a deceased child or children her surviving. Appellee contends that the will, codicils, the petition to the court of common pleas and the rights of the parties to the property received thereunder must be construed according to the laws of Indiana; that the testator did not intend to create, and did not create, an executory devise by the tenth item of the first codicil to the will, and that the absolute title to the property vested in the children of the testator immediately upon the termination of the trust estate and its division among them pursuant to the proceedings had in the court of common pleas of Marion county, Indiana; also that if by the item in question the testator attempted to create an executory devise the same is void, for the reason that the will vested the first takers with an absolute power of disposition of the property devised to them, which is repugnant to any limitation over. It is also contended that the appellants have been guilty of *laches,* and that an executory devisee cannot require an ac-

counting but must trace the property which the first taker received subject to the executory bequest.

FYFFE, RYNER & DALE, and WILLIAM F. ANDERSON, (COLIN C. H. FYFFE, and LEO BREWER, of counsel,) for appellants.

CHARLES M. HAFT, and JOHN E. FOSTER, for appellee.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the court:

In construing wills the constant effort of the courts is to ascertain and give effect to the intention of the testator as expressed by the language of the whole will and to give effect to the same in so far as is consistent with the established rules of law and the public policy of the State. (*Morrison* v. *Tyler*, 266 Ill. 308; *Howe* v. *Hodge*, 152 id. 252.) This rule is as old as the law of wills itself and a necessary part of it, as any other rule would defeat the very object in permitting a disposition to be made of property by last will and testament. The intention is to be gathered from a consideration of the whole will and all of its parts, and not from the isolated sentences, clauses or paragraphs of which it is composed. (*Black* v. *Jones*, 264 Ill. 548.) Where it consists of an original will and one or more codicils, all are to be construed together as an entirety or one instrument. (40 Cyc. 1421; *Fry* v. *Morrison*, 159 Ill. 244; *Hubbard* v. *Hubbard*, 198 id. 621.) In cases of doubt, where some of the provisions of a will or codicil have been revoked by a later one, resort may be had to the revoked provisions as an aid in gathering the intention of the testator as expressed by his later acts. (*Langdon* v. *Pickering*, 19 Me. 214.) When so construed the question here presented is, what was the intention of the testator as expressed by the language used in the will in the case at bar?

When resort is had to the provisions of the original will by which the trust was created, and which are superseded

by the later provisions contained in the tenth item of the first codicil, it will be seen that the only substantial difference between the provisions of the two instruments in this respect is, that by the codicil the terms of the trust are so enlarged as to include all of the children of the testator, and the words "or afterwards" were added after the words, "if any of said children shall die before I do," in that part of the will wherein provision is made for the disposition of the property in case of the death of any of the testator's children without leaving issue during the lifetime of the testator. The codicil makes no change, however, in the character of the estate given, the time of its vesting or the time or manner of terminating the trust estate and the making of a division of the *corpus* of such estate among his children.

By the tenth item of the first codicil the testator gives the residue of his estate to trustees, "in trust for the sole use, ownership, benefit and behoof" of his five children, "in equal parts, share and share alike, they, my said children, each to have, hold and own the one-fifth part of the proceeds thereof annually, and when the fund shall be divided by said trustees or their successors, to have the one-fifth part of the principal thereof to her or him or her or his heirs forever, but until such division and the termination of the trust to be subject to the trust hereby made." Had the testator stopped here there could be no question as to his intention or the character of the estate taken by each of his children. By apt and appropriate words expressing his intention as clearly as words could express it, he declares that the property is to be owned by his children and become theirs or their heirs forever, subject only to the provision of the trust therein created, which may be terminated at any time, in the discretion of the trustees. After making the foregoing provision, however, the testator proceeds as follows: "If any of said children shall die before I do, or afterwards, without leaving issue, such deceased child's share shall go, and is hereby bequeathed, to my surviving

children and their heirs, equally. In all cases the child or children of any of my children who may die shall take his or her deceased parent's share only. If any of my above named children shall die leaving issue and such issue shall die childless, then in that case all property derived from me shall go to my other children and their heirs, such heirs to have only their ancestor's part in any case."

Executory devises are applicable to testamentary dispositions of personal property as well as real estate. In the case of personal property the limitation is more properly termed an executory bequest. (40 Cyc. 1648; *Glover* v. *Condell,* 163 Ill. 566.) The will in this case disposes of real and personal property. Whenever a will purposes to dispose of real estate and personal property in the same words and in the same connection, and it is manifest that the testator intended both to go together, it is held the will must be so construed. *Mulvane* v. *Rude,* 146 Ind. 476, and cases cited.

Appellants insist that by use of the above language the testator limited and qualified the estate granted so that it became a base or determinable fee, liable to be divested in the event any of the children died without leaving issue. Appellee insists that by the above language the testator only intended to provide against intestacy in the event of the death of any of his children without leaving issue, having in mind the rule that where a devisee or legatee dies during the lifetime of the testator, the devise or bequest to such child lapses and is to be distributed as intestate property. (*Haight* v. *Royce,* 274 Ill. 162; *Dorsey* v. *Dodson,* 203 id. 32; *Magnuson* v. *Magnuson,* 197 id. 496; *Schumaker* v. *Grammer,* 200 id. 48.) With the contention of appellee we do not agree. In the devising or granting clause the testator gives the estate to his children, naming them, and "to his or her heirs forever," and also provides for the contingency of any child's death after the death of the testator as well as before. This is inconsistent with an intention

to provide only against intestacy in case any child's death should occur prior to that of the testator, for the reason that if a child did not die until after the death of the testator, the property devised to him or her would not descend as intestate property but would immediately vest in such child or his or her heirs upon the death of the testator and descend to such child's heirs in case of the death of such child after the death of the testator, in accordance with the laws of his domicile. Language was used in the sixth item of the original will similar to that used in the tenth item of the first codicil, with the exception that no provision was there made for the contingency of the death of a child after the death of the testator. In the tenth item of the first codicil this contingency is provided for by the addition of the words "or afterwards" after the words "before I die," as contained in the original will.

While it is true that where the same or similar words are used in different parts of the same instrument the presumption is that the testator used them in the same sense in each instance, (*Madison* v. *Larmon,* 170 Ill. 65,) this presumption cannot prevail where the words are used in connection with other words not contained in the former instrument, which explain, change or modify the legal effect of the words as used in such former connection. By the addition of the words "or afterwards," in the tenth item of his first codicil, the testator extended the provisions of that item so as to include the death of a child or children after his death as well as before, and thus negatived any presumption that it was his intention by the above item to provide only against intestacy as to any part of his estate in case of the death of any of his children without leaving issue, which would not occur in case of the death of such child after the death of the testator. Nor was such provision necessary, as the testator, by the interposition of the word "or" between the devise to his children and the word "heirs," indicated that it was his intention to substitute the

heirs in place of their ancestors in case of the death of the latter before the estate vested. *Ebey* v. *Adams,* 135 Ill. 80.

In this connection it is to be observed that while a trust is created and the devise is to the trustees as such, it is expressly provided that the same is in trust "for the sole use, ownership, benefit and behoof" of the testator's children. It is a familiar principle in the construction of wills that where a trust is created and the devise is made to trustees for the purpose of enabling them to execute the terms of the trust, "the trustees will take exactly that quantity of interest which the purpose of the trust requires," and that if the trust requires it the fee will be taken, but if a less estate will suffice, a less estate, only, will be vested. (*Ebey* v. *Adams, supra.*) It is also well established that an absolute gift of all of the income of the trust estate indicates an intention on the part of the testator that the fee in the trust property shall vest in his children at once upon his death. (*Bush* v. *Hamill,* 273 Ill. 132.) It was not necessary for the purpose of executing the trust provided for in this case that the trustees should take the fee simple title to the property, and under the rule announced in the above cases we must hold that such title did not vest in them by virtue of the above provisions of the will.

It is further to be noted in this connection that the testator expressly provides that when the trust is terminated his children are each "to have the one-fifth part of the principal thereof," meaning the trust estate, "to her or him or her or his heirs forever, but until such division and the termination of the trust to be subject to the trust hereby made." The provision that the same should remain subject to the trust thereby created is wholly unnecessary and superfluous if it was the intention and understanding of the testator that by the terms of his devise the title was not vested in the children but was in the trustees until the time of the termination of the trust and the division of the trust estate. When these various provisions of the will are con-

sidered and the same construed in the light of the well set-
tled rules of law, we think it must be held that the intention
of the testator as expressed by the language of his will
was not to provide against intestacy in case of the death
of any of his children without leaving issue, but rather to
control the disposition of the estate devised in case of such
contingency.

Considerable force is added to this construction by the
sentence in that item which provides that any of his chil-
dren may, as he or she pleases, by will give his or her share
of the estate to any other children or lineal descendants of
the testator or of his deceased wife, giving only to persons
of the blood of the testator or his wife, thus clearly evincing
an intention and desire on the part of the testator to circum-
scribe and control the devolution of the property devised
by him, in case of the death of any of his children without
leaving issue, so that it should only descend to and vest in
those who were kindred of the blood of himself or of his
wife. The provisions in question were well adapted for that
purpose and are susceptible of no other construction. To
construe them otherwise would require not only that we
ignore the clearly expressed intention of the testator as dis-
closed by this latter clause, but also that we wholly disre-
gard the well established rules of law above announced and
reject as superfluous and meaningless the words "or after-
wards," added to that portion of the original will wherein
provision is made for the devolution of his estate in case
of the death of any one or more of his children without
issue, after the death of the testator. Such a construction
is to be avoided, if possible, as in construing wills that con-
struction is to be favored which will render no word, phrase,
clause or sentence superfluous or meaningless. *Bergman* v.
*Arnhold*, 242 Ill. 218.

It now remains to consider the effect of this provision
as a limitation upon the estate previously devised by the
testator to his children.

275 — 35

Appellee insists that as the fee or absolute title was devised by the first clause it could not subsequently be cut down to a lesser estate by any subsequent clause or clauses in the will. While this is true as a general proposition, there is the well recognized exception made to this otherwise general rule in case of an executory devise, whereby the testator may limit a fee upon a fee, by way of qualification of the first estate granted, in such a way that upon the happening of some contingency the estate first granted may be cut down to a base or determinable fee. *Smith* v. *Kimbell*, 153 Ill. 368; *Bradsby* v. *Wallace*, 202 id. 239; *Fifer* v. *Allen*, 228 id. 507; *Ahlfield* v. *Curtis*, 229 id. 139; *Brenock* v. *Brenock*, 230 id. 519; *Mayer* v. *McCracken*, 245 id. 551; *Williams* v. *Elliott*, 246 id. 548; *Ashby* v. *McKinlock*, 271 id. 254.

In *Williams* v. *Elliott, supra,* on page 552 of the opinion it is said: "Although an estate in fee simple is devised it may be limited by a subsequent valid provision that the estate shall go over to others upon the happening of a certain contingency. The estate, when so limited, is still a fee, for the reason that it will last forever if the contingency does not happen, but so long as it is possible that the contingency may happen it is a base or determinable fee. One of the contingencies upon which such a limitation may lawfully rest is the death of the first devisee without issue, and so far as the executory devise in this case depended upon the death of Phoebe W. Price without issue it was valid.—*Ackless* v. *Seekright*, Breese, 76; *Summers* v. *Smith*, 127 Ill. 645; *Strain* v. *Sweeny*, 163 id. 603; *Smith* v. *Kimbell*, 153 id. 368; *Lombard* v. *Witbeck*, 173 id. 396; *Gannon* v. *Peterson*, 193 id. 372; *Johnson* v. *Buck*, 220 id. 226." In that case the testator devised his real estate in fee simple to his niece and three daughters and their heirs and assigns forever, subject to the life estate of his widow. This was followed by a provision that the estate devised to the niece should go to the daughters in equal parts, in fee simple, in

case the niece should not dispose of it by will or otherwise before her death and should die without issue, seized of such estate. We there held the devise created by such provision to be an executory devise, and that the same was void for the reason that it vested in the first taker the absolute power of disposition of the whole estate, which is inconsistent with the limitation attempted to be imposed upon it as an executory devise.

In *Mayer* v. *McCracken, supra,* the testator by the third clause of his will gave his daughter certain property situated at and known as 147 Center street, in the city of Chicago, her heirs and assigns forever. By the eighth clause he further directed that should his daughter die before his wife, then all of the property, real and personal, bequeathed to her should belong to his wife, her heirs and assigns forever, provided that if the daughter married and had children then the estate should belong to her children, the wife to act as their guardian. We there held the devise to the daughter created a base and determinable fee in her, and said: "The principal questions at issue and to be determined here depend upon the construction of the last will and testament of John B. Mayer. The third clause of his will gave to the daughter, Anna Mayer, (afterwards McCracken,) the fee to the real estate therein described, and, standing alone, created in her an estate in fee simple. It is the policy of our courts to adopt such a construction of a will as will give an estate of inheritance to the first devisee unless there are other clauses in the will which disclose clearly that it was the intention of the testator to limit or qualify the estate devised. In this will there can be no question as to the intention of the testator, as by the eighth clause he discloses clearly and expressly that he desired to make an executory devise to Veronicka Mayer, her heirs and assigns forever, of the same property. This question has been before us so frequently that it is unnecessary to cite authorities as to the proper construction to be placed

upon this will in determining the estate taken by the daughter, Anna, in the property devised to her by the third clause. The executory devise is valid, and Anna was given a base or determinable fee in the property at 147 Center street, which would be defeated by her death without issue during the lifetime of her mother. This property having been taken by condemnation proceedings, in which all the parties having any interest in the real estate were made defendants, the money awarded by the jury and paid by order of the court into the hands of the county treasurer took the place of the real estate and was subject to the same limitations under the will of John B. Mayer as the real estate itself had been."

In *Smith* v. *Kimbell, supra,* the testator owned certain property in the city of Joliet, in this State, and in LaPorte county, Indiana, and directed that the same should be and become the property of his daughter, Sarah Jane Spears, and that should she die leaving no heirs all of the property should be equally divided among his sisters, naming them. In that case we held the devise to the daughter created a base or determinable fee by way of executory devise in her, and that the same was not void as a perpetuity for the reason that the words "die leaving no heirs" were equivalent to "dying leaving no children or issue" and indicated a definite failure of issue, and that a devise of such character which is to take effect upon a definite failure of issue is not void under the rule against perpetuities.

Under the foregoing authorities there can be but little question but that if this will is construed in accordance with the decisions of this State the children of the testator took but a base or determinable fee in the property devised to them, subject to be divested and revert to the children of the grantor, in accordance with the provisions of the will, in case of the death of any child or children without leaving issue.

In construing this will it must be borne in mind that the testator was a resident of the State of Indiana, that his property was situated there and his will was drawn and executed in accordance with the laws of that State. Under such circumstances it is to be presumed that he was familiar with the laws of that State and intended that the devises and bequests therein made should be construed in accordance with the laws of such State. However, the law in relation to the creation of executory devises is substantially the same in every State, and our attention has been called to no case in the State of Indiana announcing a rule in any way conflicting with the one in force in this State. In the recent case of *Curry* v. *Curry*, 58 Ind. App. 567, in construing a will by which the testator devised the residuum of his estate, both real and personal, to his son on certain conditions, restrictions and limitations and creating a trust in respect to such estate, which the trustees were authorized to terminate, on certain conditions, when the devisee attained the age of forty years, and which further provided that if his son should never marry, or if he should marry and die without leaving a wife and children him surviving so as to inherit after him, then $10,000 of the property devised to the son should be equally divided between two persons named, share and share alike, and the residue given to another person who was then living in the State of Ohio, it was held that the devise to the son created a base or determinable fee in him. In answer to the contention of appellants that the devise to the son constituted a complete and absolute gift to him of the property, which could not be cut down by any subsequent clauses in the will, the court said: "In connection with the rule insisted upon by appellants we must not ignore another equally well settled fact, viz., 'that where an estate otherwise an estate in fee simple is devised in one clause of a will in clear and decisive terms, and the subsequent provisions clearly and distinctly show an unmistakable intention upon the part of the testator to give

an estate less than a fee simple, such latter intention must control.'—*Hayes* v. *Martz,* 173 Ind. 279, 287; 89 N. E. Rep. 303; 90 id. 309, and cases cited." And it was there further said: "It is also true that where a testator by one item of his will gives to a devisee an absolute and unqualified fee in real estate and by another item attempts to make a gift or devise over of what may remain undisposed of by such first taker at his death, that such limitation over will be held void for repugnancy. This is necessarily so, because where such testator by one item of his will devises to a first taker an absolute estate in fee, he has no estate left after the vesting of such precedent estate out of which to carve a remainder. (*Outland* v. *Bowen,* 115 Ind. 150; 17 N. E. Rep. 281; 17 Am. St. Rep. 420; *Mulvane* v. *Rude, supra; Ide* v. *Ide, supra; Damrell* v. *Hartt,* 137 Mass. 218.) The authorities, however, seem to recognize a distinction between a limitation over by way of remainder and a limitation over by way of executory devise. The former will not be upheld while the latter will be, provided that by the terms of such limitation over the rule against perpetuities is not violated. See *Selman* v. *Robertson,* 46 S. C. 262; 24 S. E. Rep. 187, and authorities cited."

From the above language it will be seen that the law in the State of Indiana is substantially the same as it is in this State on this question. It matters not by the laws of which State the will in this case is construed, the ultimate conclusion reached must be that Catherine S. Brydon took only a base or determinable fee in the property devised to her by her father's will, and upon her death without leaving issue her estate reverted to and vested in the other children of the testator in accordance with the terms and provisions of his will.

Appellee insists that the executory devise created by the tenth item of the first codicil is void, for the reason that it vests the first taker with the absolute power of disposition of the property, which is inconsistent with and re-

pugnant to the limitation attempted to be imposed upon it by such devise. The language relied upon as vesting this power in the first taker is the provision that any of the children "may, as he or she pleases, by will give and bequeath his or her share of my estate to any other child or lineal descendant of mine or of my deceased wife, giving it only to persons of my or her blood," coupled with the further provision that when the trustees decide to terminate the trust "they do not do so except in a very strong, clear case of its propriety, and not in any case to enable such child to invest his or her money in speculation." While the foregoing language, standing alone and by itself, strongly implies such power, we think it cannot be so construed when it is read in connection with the other provisions of the will. The testator does not say that the children shall have the right to dispose of the property when the trust is terminated, and the fact that he says that the trust shall not in any case be terminated to enable them to invest their money in speculation does not necessarily imply that they shall have such power and may dispose of the fee title to the estate vested in them by the will. Nor do we think the fact that they are given the right to dispose of their share by will renders the executory devise or bequest void for that reason. The power granted by that clause is not an absolute right of disposition, but by its terms is so circumscribed and limited that it could only be exercised in favor of the lineal descendants of the testator or his wife. It is inconsistent with the devise of the absolute estate to the children, and would be void as a limitation upon such estate for the reason that a person cannot make an absolute gift of his property in one part of his will and by a subsequent clause restrict the free use or disposition of such property. (*Jenne* v. *Jenne,* 271 Ill. 526.) The power granted in the instant case is not one of absolute and unrestricted power of disposition but is a limited one, which can only be exercised at death by will, and then only in the particular way

pointed out by the testator in his will. This is not sufficient. The power of disposition, in order to defeat the base or determinable fee created by the executory devise, must be absolute and unlimited, and such that it may be exercised during the lifetime of the devisee as well as by will at death. (24 Am. & Eng. Ency. of Law,—2d ed.—446.)

In *Terry* v. *Wiggins,* 47 N. Y. 512, the power annexed to the gift was "to sell or otherwise dispose of the property if the devisee should require it or deem it expedient," and it was there said: "The power of disposal is not absolute, so as to bring it within the rule making all devises with absolute power of disposal in the devisees gifts in fee. The power could only be exercised, under the will, in case the wife should require it or should deem it expedient,—that is, with a view to her 'personal use and maintenance,' the purposes for which it was given. (*Trustees of Auburn Seminary* v. *Kellogg,* 16 N. Y. 83.) The power was to be exercised during life and not at death. An absolute power of disposal includes a power to dispose of by will as well as by sale or otherwise during life, which is incompatible with a mere life estate, and such power is not given by the terms of this will. The words of the power, in the connection in which they are used, clearly indicate an intention to authorize a disposition of the estate by the devisee only by a conveyance, which should take effect during her lifetime, and the whole scope of the will tends to the same conclusion. It was not the intention of the testator to confer upon her the power to dispose of the property by will upon any object of her bounty." The same is true in the case at bar, which limits the power of disposition by will to those who are of the blood of the testator or his wife.

In *Healy* v. *Eastlake,* 152 Ill. 424, we held a devise of a base or determinable fee to a daughter, with the provision that should she die without issue of her body the remainder should at once pass and absolutely vest in Benjamin S. La-

mothe and his heirs, but should she die leaving issue of her body then the remainder of the property should pass and be vested absolutely and forever in such issue, "subject, nevertheless, to any provisions or restrictions as my said daughter, Alice, may by will and testament see fit to make," and with the further provision that "I hereby express the wish that my said daughter, Alice, will make such will; that should the said Benjamin S. Lamothe survive her said issue, that then the remainder of the said property shall vest in him, I being particularly desirous that said Benjamin S. Lamothe should possess all the remainder of my said property unless there be living direct issue of my said daughter, Alice," did not confer such an absolute power of disposition as would defeat the base or determinable fee created by the other provisions of the will. We think the same may be said of the limited power of disposition attempted to be conferred in this case, and what is said in the foregoing decision is controlling here.

The appellee further insists that the appellants are precluded from bringing their action by reason of the proceedings had in the court of common pleas of Marion county, Indiana, more than forty years ago, by which the trust was terminated and the trust property divided among the children of the testator in accordance with the terms of his will. As we construe this instrument there is no connection whatever between the title to the property taken by the children under the will and the trust created by the same instrument. Each is wholly independent of the other, and the proceedings had in the court of common pleas of Marion county had nothing whatever to do with the fee of the property vested in the children under such will. By the provisions of the will the testator has vested the fee in the property in his children, subject to be divested and determined in the event of the death of any one or more of them without leaving issue and subject to the trust therein created, which might be determined at any time, in the discretion of

the trustees. The sole object and purpose of the proceedings in the court of common pleas was to secure a termination of the trust and invest the children of the testator with the property devised to them, relieved of the trust. The only matter then before the court and the only thing determined at the time was that the trust should be terminated, but in terminating the trust the court in no way invested the children with any different title to the property from that given to them by the will of their father. Such proceedings, therefore, do not bar them from now asserting their rights in the fee of the property given to them by the other provisions of the will.

For the reasons given, we are of the opinion that the children of John H. Bradley only acquired a base and determinable fee in the property in question, which was subject to be divested and revert to the children of the testator in the event of the death of any child without leaving issue. This occurred in the case of Catherine S. Brydon.

Appellants were not guilty of *laches*. They commenced their action within a reasonable time after any rights claimed by them accrued. They had no rights which they could enforce prior to the death of Mrs. Brydon childless. While appellants cannot recover the specific property originally turned over by the trustees to Mrs. Brydon, that is no fault of theirs. If they are entitled to recover at all they are entitled to be paid the amount of the personal property turned over by the trustees to Mrs. Brydon.

For the reasons given, the judgment of the Appellate Court will be reversed and the decree of the circuit court will be affirmed.

*Judgment of Appellate Court reversed.*
*Decree of circuit court affirmed.*